UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL DEFEBO :
    Plaintiff, : CIVIL ACTION
v. :
: NO. 09-02993
ANDERSEN WINDOWS, INC.; :
 and :
THE HOME DEPOT :
    Defendants :

## **AMENDED COMPLAINT**

AND NOW comes the Plaintiff, Daniel DeFebo, by his attorneys, Harris and Harris, P.C, and files this Complaint and, in support thereof, avers as follows:

1. Plaintiff, Daniel DeFebo ("DeFebo"), is an adult individual residing at 1212 Township Line Road, Hilltown, PA 18927.

2. Defendant, Andersen Windows, Inc. ("Andersen"), is a duly constituted Minnesota Corporation, having corporate offices at 551 N. Main Street, Bayport, MN 55003 and having designated C T Corporation System, 1635 Market Street, Philadelphia, PA 19103-0, as its agent in Pennsylvania for the service process.

3. Defendant, Andersen Windows, Inc. is present and amenable to suit in the Commonwealth of Pennsylvania pursuant to the provisions of 42 Pa. C. S. §5322 in that it regularly transacts business in the Commonwealth.

4. Defendant, Home Depot U.S.A., Inc., incorrectly captioned as The Home Depot ("Home Depot"), is a duly constituted Georgia Corporation having corporate

offices at 2455 Paces Ferry Road, Atlanta, GA 30339-0 as well as a retail outlet, which is the subject of this litigation, at 650 Easton Road, Warrington, PA 18976.

5.	At all relevant times, Home Depot represented itself to the public as an expert in supplying construction materials, including the provision of related services such as reviewing construction plans and determine which materials meet the specifications set forth therein.

6.	In or around May 2007, DeFebo contacted Home Depot at its store in Warrington, Pennsylvania, provided Home Depot with construction plans prepared by a Pennsylvania registered architect (the "Construction Plans") for the construction of a new custom home at DeFebo's property located at 1212 Township Line Road in Hilltown Township, Bucks County, Pennsylvania (the "Property"), and requested that Home Depot provide him a quote for supplying Andersen Windows as specified in the Construction Plans.

7.	On various dates from May 2007 through September 2007, DeFebo purchased various quantities of windows manufactured by Andersen Windows from Home Depot at its Warrington, Pennsylvania store. The dates of purchase and types of windows purchased are set forth in the invoices attached hereto as Exhibit "A" and incorporated herein by reference.

8.	The invoices set forth in Exhibit "A" were prepared by employees of Home Depot based upon their review of the Construction Plans.

9.	Upon issuance of the invoices set forth in Exhibit "A", DeFebo paid to Home Depot the purchase price for the invoiced windows. The total purchase price

plaintiff tendered to Home Depot for all windows is Ninety Six Thousand Seventeen Dollars and Sixty Four Cents ($96,017.64).

10. On various dates from June 2007 through August 2007, DeFebo accepted delivery of the windows described in Exhibit "A" at the Property.

11. Upon receipt of the windows described above and manufactured by Andersen Windows, DeFebo's contractor installed the windows in accordance with Andersen Windows' installation specifications.

12. Installation of the subject windows was completed by September 30, 2007.

13. Subsequent to the time that installation was completed, during September and/or October 2007, DeFebo's contractors were unable to install the jamb extensions specified in the Construction Plans, manufactured by Andersen and purchased from Home Depot into the window frames of thirteen (13) window units consisting of casement windows mulled together with arched windows above during the manufacturing process.

14. The jamb extensions are designed to be inserted into a groove manufactured into the wooden window frame. The installed jamb extension is intended to provide a complete jamb covering the framing studs and wall edges into which the window unit is installed.

15. Upon discovering that his contractor could not install the extension jambs, DeFebo and his contractor inspected each of the subject windows by exposing the wooden window frame.

16. Inspection of the wooden window frame revealed that when Andersen mulled the arched windows together with the casement windows, the top of the casement window frame and the bottom of the arch window frame formed an obstruction which prevented the side window jamb extension from being installed into the receiving grooves built into the windows.

17. As a result of the misalignment of the frames of the casement windows and the arch windows, which were mulled together by Andersen, it is impossible to install the jamb extensions, which are intended to provide a protective and decorative cover for the window frames.

18. In addition to the defects described above, DeFebo experienced the following problems with the windows purchased from Home Depot and manufactured by Andersen, which are set forth in Exhibit "A":

   a. The Construction Plans detail a large, two-story great room for which they specify two (2) rows of windows: four (4) units comprised of three (3) transom windows above three (3) casement windows on the first floor level; and four (4) arched windows located directly above the casement/transom units on the second floor.

   b. The Construction Plans specify that the first floor casement/transom units and the second floor arch windows are to be the same width.

   c. The width of the second-level arch windows ordered by Home Depot and manufactured by Andersen is approximately two inches (2") narrower than

the first-level units below, contrary to the specifications in the Construction Plans.

d. The Construction Plans specify a patio door with three (3) transom windows of equal width above to be installed in the breakfast room to provide access from the first floor of the home to the rear deck.

e. DeFebo purchased the patio door and transom window unit pursuant to a purchase order prepared by Home Depot based on its review of the Construction Plans.

f. The transom-window unit ordered by Home Depot and manufactured by Andersen included two (2) transom windows of equal width and a third transom window that was much narrower than the other two, resulting in a finished door/window unit that is asymmetrical.

g. The Construction Plans specify a garage window unit comprised of two side-by-side casement windows mulled together or manufactured to form one window unit.

h. The Construction Plans specify that the casement windows are to open in opposite directions, so that the windows meet at the centerline of the unit when closed and open away from the centerline in the direction of the outer edges of the window frame.

i. It is customary for casement window units of the type specified in the Construction Plans for installation in the garage to open in opposite

directions; however, the windows which Home Depot ordered and Andersen manufactured open in the same direction.

19. In or around September 2007, plaintiff discovered the defective conditions of the subject windows and reported the circumstances to Home Depot and Andersen.

20. After repeated inquiries by DeFebo, Tim Stevens ("Stevens"), the Home Depot Sales Associate, requested that Michael Bellizia, a representative of Andersen Windows and a certified Andersen Windows repairman, contact DeFebo to arrange a meeting at the property for the purpose of repairing the defective conditions described above.

21. In November 2007, Bellizia arrived at the Property, met with DeFebo and observed the defective conditions of the windows.

22. During the November 2007 meeting, Bellizia explained to DeFebo that he saw the problems with the windows but was not prepared to perform any repairs during that visit. Bellizia agreed to ship lumber for the windows to repair the problems and return at a later date.

23. Within two weeks after the November 2007 meeting, Andersen and/or Home Depot shipped new extension jambs to the Property.

24. Upon receipt of the new extension jambs, DeFebo contacted Bellizia numerous times to request that he return to the Property to install same, but received no response from Bellizia.

25. DeFebo asked his contractor to install the new extension jambs, but installation was impossible due to the fact that the frames of the individual window units

which were mulled together by Andersen obstructed the groove into which the extension jambs were to be inserted and prevented the installation of the extension jambs.

26. From November 2007 until February 2008, DeFebo repeatedly contacted Bellizia and Stevens and received no response.

27. In March or April 2008, DeFebo received a telephone call from Peter Petrilli ("Petrilli"), who identified himself as the "regional manager" for Andersen, and assured DeFebo that he is the person who can solve DeFebo's problems with the windows. Petrilli arranged another meeting at the Property to observe the defective conditions of the windows.

28. In April or May 2008, DeFebo, Stevens, Bellizia, Petrilli and David Fox, who identified himself as a Home Depot employee, met at the Property to view the windows.

29. All representatives of Home Depot and Andersen who attended the meeting described in Paragraph 28 agreed that the problems identified by DeFebo and noted above were legitimate and require correction.

30. At the meeting described in Paragraph 28, Andersen agreed that it would manufacture a new transom window unit to be installed above the patio door and ship it to the Property.

31. Shortly after the meeting described in Paragraph 28, Andersen and/or Home Depot again shipped new extension jambs to the Property; however, the new extension jambs could not be installed because the defect resulting from the mulling of

7

the arched windows to the casement windows still obstructs the groove into which the extension jambs are to be installed.

32. Despite the representations of Home Depot and Andersen representatives at the meeting described in Paragraph 28, DeFebo never received the correct transom unit for installation above the patio door.

33. From April 2008 until September 2008, DeFebo contacted representatives of Home Depot and Andersen to determine the status of the repairs to the defective windows and the shipment of the new transom window units. DeFebo received no response to his inquiries.

34. In September 2008, DeFebo purchased a new patio door and transom unit from a different manufacturer and attempted to return the Andersen patio door and transom unit to Home Depot.

35. Home Depot accepted the return of the transom window unit but did not refund the purchase price to DeFebo.

36. After making DeFebo wait outside its Warrington, Pennsylvania store for nearly two (2) hours, Home Depot, through Stevens, informed DeFebo that it did not supply the patio door to him and refused to accept the return.

37. Subsequent to September 2008, DeFebo received no response from Home Depot and/or Andersen to repeated inquiries requesting repair or replacement of the defective windows.

38. In order to proceed with the timely construction of his new custom home and to protect the windows from possible damage resulting from exposure to the

elements, DeFebo hired a contractor to fabricate jamb extensions to be installed without the need to be inserted into the obstructed grooves in the window frames and to install same.

39. The fabrication and installation of the jamb extensions was a labor intensive process requiring substantial skill, and resulted in a completed window with visible nail holes in window jambs, as the jamb extensions could not be held in place by the grooves in the window frames as originally designed.

## COUNT I

### DEFEBO v. HOME DEPOT and ANDERSEN
### (BREACH OF CONTRACT)

40. DeFebo incorporates the averments of Paragraphs 1 through 39 of this Complaint by reference as if set forth herein at length.

41. In purchasing the windows from Home Depot, DeFebo relied on Home Depot's representation that its employees possess the requisite expertise to provide the services necessary to review the Construction Plans and properly order the windows specified therein from Andersen.

42. DeFebo believes and therefore avers that Home Depot failed to properly review the specifications in the Construction Plans and/or to properly prepare purchase orders instructing Andersen to manufacture and ship the windows as specified in the Construction Plans.

43. As a result of Home Depot's failure to properly review the specifications set forth in the Construction Plans and/or to properly prepare the purchase orders,

DeFebo received windows which did not match the specifications set forth in the Construction Drawings, resulting in the defective conditions noted above.

44. Home Depot's failure to properly order the windows on behalf of DeFebo is a breach of its contractual duty to supply DeFebo with the services necessary to properly review the Construction Plans and prepare purchase orders for the windows specified therein.

45. DeFebo believes and, therefore, avers that Home Depot contracted with Andersen to manufacture and deliver the windows described in Exhibit "A".

46. DeFebo believes and, therefore, avers that Home Depot and Andersen windows intended DeFebo to be a third-party beneficiary to the contract between Home Depot and Andersen for the construction and delivery of the windows described in Exhibit "A", as DeFebo is the intended user of the window.

47. In the alternative, in the event that it is determined that Home Depot properly reviewed the Construction Drawings and properly prepared purchase orders for the windows specified therein, DeFebo believes and, therefore, avers that Andersen Windows did not manufacture and/or supply the windows specified in the purchase orders, resulting in the defective conditions noted above.

48. Andersen's failure to manufacture and/or supply the windows in accordance with Home Depot's properly prepared purchase orders is a breach of its contractual duty to supply DeFebo with the windows described in Exhibit "A".

49. As a result of the aforementioned breaches, DeFebo has suffered substantial damages, including the cost of fabricating and installing custom jamb

extension, the cost of the replacement patio door and transom window unit, the cost of the original patio door and transom window unit which Home Depot has refused to refund to DeFebo, diminution in the value of his home resulting from uncorrected defects, and costs of suit.

WHEREFORE, for the foregoing reasons, Plaintiff, Daniel DeFebo, demands judgment against Defendants, The Home Depot and Andersen Windows, Inc., in an amount in excess of $50,000.00, together with interest and costs of suit.

## COUNT II

## DEFEBO v. HOME DEPOT
## (MISREPRESENTATION)

50. DeFebo incorporates the averments of Paragraphs 1 through 49 of this Complaint by reference as if set forth herein at length.

51. At all relevant times, Home Depot represented to DeFebo that its employees at its retail store in Warrington, Pennsylvania, including, but not limited to, Stevens, possessed the knowledge and expertise required to review the Construction Plans and to order Andersen products as specified in the Construction Plans.

52. Home Depot made the aforementioned representation to DeFebo for the purpose of inducing DeFebo to purchase windows from Home Depot rather than through another supplier of Andersen products.

53. At the time that DeFebo purchased the windows described in Exhibit "A", Home Depot knew or should have known that its employees did not possess the knowledge, experience and/or training necessary to provide DeFebo with the services

11

involved in reviewing his Construction Plans and ordering Andersen products as specified therein.

54. Home Depot made the aforementioned representations with the intent to deceive DeFebo.

55. DeFebo purchased the windows described in Exhibit "A" in reliance on the aforementioned representations.

56. As a result of DeFebo's reliance on Home Depot's false representation regarding its employees knowledge, experience and training, DeFebo purchased and received defective Andersen products and has suffered substantial damages, including the cost of fabricating and installing custom jamb extension, the cost of the replacement patio door and transom window unit, the cost of the original patio door and transom window unit which Home Depot has refused to refund to DeFebo, diminution in the value of his home resulting from uncorrected defects, and costs of suit.

WHEREFORE, for the foregoing reasons, Plaintiff, Daniel DeFebo, demands judgment against Defendant, The Home Depot, in an amount in excess of $50,000.00, together with interest and costs of suit.

## COUNT III

### DEFEBO v. ANDERSEN WINDOWS
### (Breach of Express Warranty)

57. DeFebo incorporates the averments of Paragraphs 1 through 56 of this Complaint by reference as if set forth herein at length.

58.	At the time that DeFebo purchased the windows described in Exhibit "A" from Home Depot, DeFebo received a written Limited Warranty from Andersen. A copy of the Limited Warranty is attached hereto as Exhibit "B" and incorporated herein by reference.

59.	The provisions of the Limited Warranty regarding the components of the windows other than glass provide that the "[n]on-glass portions of Andersen windows and doors (including non-electric operators, locks, lifts, balance systems, hinges, handles, insect screens, weatherstripping, sash and frame members) are warranted to be free from defects in manufacturing, materials and workmanship for a period of ten (10) years from the date of purchase ... ."

60.	As set forth in Paragraph 47, above, DeFebo believes and therefore avers that Andersen did not properly manufacture the windows which DeFebo ordered through Home Depot.

61.	The defects resulting from Andersen's failure to properly manufacture the windows are described in Paragraphs 16, 17 and 18, above.

62.	In the event of a defect in the non-glass portion of Andersen windows resulting from manufacturing, materials or workmanship, the Limited Warranty provides that Andersen shall, at its option:

> (1) provide replacement parts to the Andersen retailer/dealer you specify – installation labor is not included; or (2) provide a factory-authorized repair to the existing component at no cost to you; or (3) refund the original purchase price or retailer's dealer's price at the time of the original purchase, whichever is less. Such replacement parts or repairs are warranted for the remainder of the original limited warranty period."

63. As set forth above, DeFebo notified Andersen of the defective conditions of the window frame members in the casement/arch window units which were mulled together by Andersen, and the other windows which were not manufactured in accordance with the purchase orders prepared by Home Depot.

64. Despite repeated requests to correct the defective conditions and multiple meetings at the Property with Andersen representatives, Andersen has failed and refused to correct the defective conditions in accordance with the Limited Warranty.

65. Due to Andersen's failure to fulfill its obligations to plaintiff under the Limited Warranty, DeFebo is entitled to any remedy available at law, including the right to recover from Andersen the full cost to replace the defective windows which cannot be repaired, as well as the cost of the fabricating and installing custom jamb extensions.

WHEREFORE, for the foregoing reasons, Plaintiff, Daniel DeFebo, demands judgment against Defendant, Andersen Windows, Inc. in an amount in excess of $50,000.00, together with interest and costs of suit.

## COUNT IV

### DEFEBO v. HOME DEPOT
### (Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose)

66. DeFebo incorporates the averments of Paragraphs 1 through 65 of this Complaint by reference as if set forth herein at length.

67. Home Depot is a merchant which deals in the sale of Andersen windows and which holds itself out as having knowledge or skill particular to the selection and furnishing of Andersen windows.

14

68. At the time that DeFebo contracted to purchase the windows from Home Depot, Home Depot had reason to know that DeFebo was relying on Home Depot's skill or judgment to select and furnish suitable windows in accordance with the Construction Plans.

69. Under the Uniform Commercial Code, as adopted in Pennsylvania, there are implied warranties of merchantability and fitness for a particular purpose in contracts for the sale of goods.

70. As set forth above, Home Depot failed to select and furnish suitable windows to DeFebo which met the specifications set forth in the Construction Plans.

71. Due to its failure to properly select and furnish windows to DeFebo, Home Depot has breached the implied warranties of merchantability and fitness for a particular purpose embodied in the contract between DeFebo and Home Depot.

72. As a result of Home Depot's breach of the implied warranties of merchantability and fitness for a particular purpose, DeFebo has suffered damages as set forth above.

WHEREFORE, for the foregoing reasons, Plaintiff, Daniel DeFebo, demands judgment against Defendant, The Home Depot, in an amount in excess of $50,000.00, together with interest and costs of suit.

## COUNT V

### DEFEBO v. HOME DEPOT and ANDERSEN WINDOWS
### (Violation of Unfair Trade Practices and Consumer Protection Law)

73. DeFebo incorporates the averments of Paragraphs 1 through 72 of this Complaint by reference as if set forth herein at length.

74. As set forth above, Andersen has failed to comply with the terms of the written warranty given to DeFebo in conjunction with his order and purchase of the windows described above.

75. As a result of Andersen's failure to comply with the terms of the written warranty provided to DeFebo in conjunction with the purchase of the subject windows, DeFebo has suffered damages as described above in an amount in excess of $50,000.00.

76. As set forth above, Home Depot engaged in fraudulent conduct in misrepresenting to DeFebo the skill and expertise of its employees in reviewing construction plans, and selecting and furnishing suitable Andersen Windows products.

77. As a result of Home Depot's misrepresentation, DeFebo entered into the contract to purchase Andersen windows from Home Depot and has suffered damages as described above in an amount in excess of $50,000.00.

78. Pursuant to the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-2, 201-3, Andersen's failure to comply with the terms of the written warranty provided to DeFebo in connection with the purchase of the subject windows is an unlawful act.

79. Pursuant to the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-2, 201-3, Home Depot's fraudulent conduct described above is an unlawful act.

80. Pursuant to the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-9.2, DeFebo is entitled to recover actual damages in a private action against Home Depot and Andersen.

81. Pursuant to the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-9.2, the court is authorized to award DeFebo up to three times the actual damages suffered by DeFebo.

82. Due to Andersen's failure to comply with the terms of its written warranty over an extended period of time and the dilatory conduct of both Home Depot and Andersen in failing to timely return phone calls, to schedule inspections, failing to perform repair work, and making DeFebo wait for nearly two (2) hours before refusing to accept the return of his patio door, DeFebo is entitled to receive treble damages from defendants.

83. Pursuant to the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-9.2, the court is authorized to award DeFebo costs and reasonable attorneys fees.

84. As a result of the unlawful acts of Home Depot and Andersen, DeFebo has incurred and continues to incur liability for costs and attorneys fees.

85. Due to Andersen's failure to comply with the terms of its written warranty over an extended period of time and the dilatory conduct of both Home Depot and Andersen in failing to timely return phone calls, to schedule inspections, failing to perform repair work, and making DeFebo wait for nearly two (2) hours before refusing to

accept the return of his patio door, DeFebo is entitled to receive an award of costs and attorneys fees and treble damages.

WHEREFORE, for the foregoing reasons, Plaintiff, Daniel DeFebo, demands judgment against Defendants, The Home Depot and Andersen Windows, Inc., in an amount in excess of $50,000.00, together with interest and costs of suit.

Respectfully submitted,

**HARRIS AND HARRIS**

By: _____
THOMAS J. SMITH, III, ESQUIRE
PA Attorney I.D. No. 83835

1760 Bristol Road
P. O. Box 160
Warrington, PA  18976
(215) 343-9000

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2009, I served a true and correct copy of the foregoing Amended Complaint by first-class mail, postage prepaid, upon the following:

>Christopher Scott D'Angelo
>Montgomery, McCracken, Walker & Rhoads, LLP
>123 South Broad Street
>Philadelphia, PA 19109
>Email: cdangelo@mmwr.com
>>Counsel for Defendant, Andersen Windows, Inc.
>
>Eric B. Smith, Esquire
>High Swartz, LLP
>40 East Airy Street
>P.O. Box 671
>Norristown, PA 19404
>Email: esmith@highswartz.com
>>Counsel for Defendant, Home Depot USA, Inc.

>>_____
>>THOMAS J. SMITH, III, ESQUIRE
>>PA Attorney I.D. No. 83835
>>
>>1760 Bristol Road
>>P. O. Box 160
>>Warrington, PA 18976
>>(215) 343-9000
>>
>>Attorneys for Plaintiff