IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL DeFEBO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No.09-2993 |
| | : | |
| ANDERSEN WINDOWS, INC., | : | |
| and HOME DEPOT U.S.A., INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                                      **September 3, 2009**

Something like a gathering storm, this is one in an increasing number of cases where the plaintiff attempts to turn straightforward breach of contract and warranty claims into tort claims. Pennsylvania law is not hospitable to such attempts.

Presently before the Court is Defendant, Home Depot's, Motion to Dismiss. This case arises out of a purchase by Plaintiff of windows from Defendant Home Depot and manufactured by Defendant Andersen Windows. Plaintiff's Complaint alleged breach of contract, misrepresentation, breach of express warranty, breach of implied warranties, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). For the following reasons, the tort claims must be dismissed.

**I.   Background Information**

    **A.   Facts**

Plaintiff, a resident of Pennsylvania, brings this Action against Andersen Windows, a Minnesota Corporation, and the Home Depot, a Georgia corporation, based on his purchase of

windows and other materials from the Home Depot in 2007. Plaintiff alleges that he approached the Home Depot in May 2007 with construction plans prepared by an architect and requested that the Home Depot provide a quote for supplying windows from Andersen Windows, as specified in the plan. (Compl. ¶ 6). According to the Complaint, from May 2007 through September 2007, Plaintiff made various purchases from the Home Depot, which then sent Plaintiff invoices for those purchases, totaling $96,017.64. (Compl. ¶¶ 7-9).

Upon accepting and receiving the windows, Plaintiff alleges that his contractor installed the windows but was unable to install certain coverings, called jamb extensions, over the frames. (Compl. ¶¶ 11-15). Plaintiff alleges that upon examination of the windows and frames, he noticed that a misalignment of the frames for the casement windows and the arch windows prevented installation of the jamb extensions. (Compl. ¶¶ 16-17). Plaintiff also alleges that he suffered other problems with his purchase, including: (1) the width of the second-level arch windows was two inches narrower than the specifications in the provided Construction Plan; (2) a transom window unit had window panels of unequal width, resulting in an asymmetrical door and window; (3) the casement window units for the garage opened in the same direction, contrary to customary practice. (Compl. ¶ 18).

Due to these defective conditions, Plaintiff alleges he contacted Home Depot and Andersen Windows in September 2007. (Compl. ¶ 19). As a result, a Home Depot Sales Associate requested that Andersen Windows send a repairman to Plaintiff's property, and Plaintiff met with this individual in November 2007. (Compl. ¶¶ 20-21). The Andersen Windows representative agreed to ship additional lumber to Plaintiff to repair the windows and to return to install the extensions. (Compl. ¶ 22). Upon receipt of these materials, Plaintiff

alleges he tried to contact the repairman, but his calls were not returned, so Plaintiff requested that his contractor install the new jamb extensions. (Compl. ¶¶ 23-24). However, Plaintiff alleges that the new extensions also could not be installed and that from November 2007 until February 2008 he attempted to contact both the Home Depot Sales Associate and the Andersen Windows representative, but he received no response. (Compl. ¶¶ 25-26).

Plaintiff alleges that in March or April 2008, he received a phone call from a regional manager for Andersen, who arranged another meeting at Plaintiff's property. (Compl. ¶ 27). According to Plaintiff, that meeting took place in April or May 2008 and was attended by himself, the Home Depot Sales Associate, the Andersen repairman and regional manager, and another Home Depot employee. (Compl. ¶ 28). Plaintiff alleges that the parties agreed the problems were legitimate and should be fixed. (Compl. ¶ 29). Plaintiff again received new jamb extensions, but alleges that they once again could not be installed. (Compl. ¶ 31). Furthermore, Plaintiff alleges that although Andersen agreed to ship a new transom window unit at the meeting, Plaintiff never received that unit. (Compl. ¶ 30, 32).

After repeated inquiries from April 2008 until September 2008, for which he allegedly received no response, Plaintiff purchased new materials from a different manufacturer. (Compl. ¶ 33-34). Plaintiff alleges that the Home Depot accepted the return of the transom window unit but did not refund the full purchase price and that the Home Depot refused to accept the return of the patio door. (Compl. ¶¶ 35-36). To proceed with the construction of his new home, Plaintiff further alleges he was forced to hire a contractor to create jamb extensions at an additional cost. (Compl. ¶ 38-39).

**B.      Procedural History**

Based on these events, Plaintiff filed his Complaint in the Court of Common Pleas of Bucks County, Pennsylvania on June 12, 2009. (Doc. 1). The Complaint included five counts: (1) breach of contract against Andersen Windows and the Home Depot; (2) misrepresentation against the Home Depot; (3) breach of express warranty against Andersen Windows; (4) breach of implied warranties of merchantability and fitness for a particular purpose against the home Depot; and (5) violation of the UTPCPL against Andersen Windows and the Home Depot.

Defendants removed the case to the Eastern District of Pennsylvania on July 7, 2009. (Doc. 1). Subsequently, both the Home Depot and Andersen Windows filed Motions to Dismiss the Complaint. (Docs. 3 and 5). Plaintiff filed a response to the Home Depot's Motion, (Doc. 8), but chose to address the issues raised in Andersen Windows's Motion by filing an Amended Complaint, (Docs. 10 and 11). This Court held a telephone conference on August 7, 2009 to determine how it should proceed in considering the Home Depot's Motion to Dismiss because the Plaintiff had subsequently amended the Complaint, but only as to Andersen Windows. (Doc. 13). The parties agreed that this Court would address Home Depot's Motion as to the Original Complaint because the arguments raised in that motion would not change given the Amended Complaint. That same day, Andersen Windows filed a Motion to Dismiss the Amended Complaint. (Doc. 14). In an Order dated August 7, 2009, this Court indicated that should any allegations in the Original or Amended Complaint survive the various Motions to Dismiss, it may be necessary for the Plaintiff to file a Second Amended Complaint. (Doc. 16).

## II.    Parties' Arguments

The Home Depot argues that the Counts for misrepresentation and violation of the UTPCPL should be dismissed for multiple reasons. First, the Home Depot suggests that the gist

of the action doctrine bars the misrepresentation claim because the gist of Plaintiff's claims against the Home Depot sound in contract rather than in tort. (Def.'s Brief at 7-9). According to the Home Depot, Plaintiff's allegations that Home Depot misrepresented its expertise are intertwined with the allegations that the Home Depot failed to perform under the contracts. (Id. at 7-9; Def.'s Reply at 1-2). Alternatively, the Home Depot argues that Count II should be dismissed under the economic loss doctrine because Plaintiff only suffered monetary loss (Id. at 9-11) or under the parol evidence rule because the court cannot consider any pre-contractual statements to prove the claim where there is an integration clause in the contract (Id. at 11-12). Finally, the Home Depot suggests that Plaintiff has failed to plead this claim with the requisite particularity under Rule 9(b). (Id. at 13).

As to the UTPCPL count, the Home Depot requests dismissal on the grounds of the economic loss doctrine and the parol evidence rule for reasons similar to those stated above. (Id. at 9-12). Furthermore, the Home Depot suggests that this claim has also not been plead with sufficient detail to allege the elements of common law fraud. (Id. at 13).

Plaintiff responds that the gist of the action doctrine does not bar his misrepresentation claim, which he characterizes as a fraud-in-the-inducement claim, because the allegations regarding the Home Depot's statements on its expertise are wholly separate from the allegations regarding contractual performance on the invoices. (Pl.'s Response at 6-7). Plaintiff asserts that discovery is necessary for this court to determine whether to apply the gist of the action doctrine. (Id. at 8). With regard to the economic loss doctrine, Plaintiff argues that under Pennsylvania law, claims for intentional torts are not barred by this doctrine. (Id. at 8-9). Furthermore, Plaintiff responds that the parol evidence rule does not bar consideration of the pre-contractual

statements for either of the claims because no contract signed by both parties and containing an integration clause exists. (Pl.'s Response at 10). Finally, Plaintiff argues that it has adequately pleaded both claims to survive a motion to dismiss. (Id. at 11-12).

In its reply, the Home Depot contends that the parol evidence rule may still apply, despite the absence of signatures on the invoices. (Def.'s Reply at 5). The Home Depot argues that under the Pennsylvania Uniform Commercial Code, 13 Pa. C.S. § 2101(c), a contract for the sale of goods can be enforceable without a signature where the goods are specially manufactured and the seller has made a substantial beginning on their manufacture before the buyer repudiates the contract. The Home Depot asserts that this provision applies here and thus the contract is enforceable.[1] (Def.'s Reply at 5-6).

### III.   Legal Standards

#### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

#### B.   Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),

---

[1] The Home Depot has provided no support for its theory that simply because the terms of a commercial contract can be enforceable with respect to the sale of goods under the Commercial Code, the written contract itself must be accepted as a final writing for purposes of the parol evidence rule. However, this Court notes that "a valid and binding contract may be formed even in the absence of signatures." Agere Systems, Inc. v. Advanced Environmental Tech. Corp., 552 F. Supp. 2d 515, 525 (E.D. Pa. 2008) (citing Shovel Transfer and Storage, Inc. v. Pa. Liquor Control Bd., 739 A.2d 133, 136 (Pa. 1999). Under the Restatement (Second) of Contracts, § 5 cmt. a, parties can manifest their mutual assent to a contract through written or spoken words, or through conduct.

the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 129 S. Ct. at 1953.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

**IV.     Discussion**

    **A.     Misrepresentation (Count II)**

As noted above, the Home Depot suggests that the misrepresentation claim should be dismissed for several reasons. Because this Court finds that the claim should be dismissed under the gist of the action doctrine, it will not address the Home Depot's alternative arguments.

Under Pennsylvania law, the gist of the action doctrine "precludes a plaintiff from recasting a breach of contract claim into a tort claim." Penn City Inv. v. Soltech, Inc., 2003 WL 22844210, at *2 (E.D. Pa. Nov. 25, 2003) (citing eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). For the tort action to survive, "'the wrong ascribed to [the] defendant must be the gist of the action, the contract being collateral.'" eToll, Inc., 811 A.2d at 14 (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super.1992)). The doctrine specifically bars claims on extra-contractual statements regarding duties or obligations of parties that are later outlined in the contract. Penn City Inv., 2003 WL 2284410, at *3.

Notably, fraud-in-the-inducement claims are not always barred by the gist of the action doctrine. eToll, 811 A.2d at 17 ("[F]raud in the inducement of a contract would not necessarily be covered by [the gist of the action] doctrine because fraud to induce a person to enter into a contract is generally collateral to (i.e., not 'interwoven' with) the terms of the contract itself."). However, the type of fraud is not necessarily dispositive, Guy Chem. Co., Inc. V. Romaco N.V., 2007 WL 184782, at *5-6 (W.D. Pa. Jan. 22, 2007), and courts have applied the doctrine to claims for fraud-in-the-inducement, see Galdieri v. Monsanto Co., 245 F. Supp. 636, 650 (E.D. Pa. 2002). Rather, a tort claim is generally barred by the doctrine if (1) it arises solely from a contract between the parties; (2) the duties allegedly breached were created and grounded in

contract itself; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Tier1 Innovation, LLC v. Expert Tech. Group, LP, 2007 WL 1377664, at *3 (E.D. Pa. May 8, 2007) (Hart, M.J.) (citing Williams v. Hilton Group, PLC, 261 F. Supp. 2d 324, 327028 (E.D. Pa. 2003)).

In Plaintiff's breach of contract claim, he asserts that he relied on the Home Depot's representations regarding its "expertise to provide the services necessary to review the Construction Plans and properly order the windows therein from Anderson." (Compl. ¶ 41). Plaintiff further alleges in that claim that the Home Depot failed to properly review the specifications in the plan and to properly prepare the order. (Compl. ¶ 43). Thus, the gist of Plaintiff's breach of contract claim as to the Home Depot appears to be that the Home Depot owed a contractual duty to Plaintiff to exercise its expertise in reviewing the plans and preparing the order, though the language of the Original Complaint does not state this duty explicitly.[2] At the same time, Plaintiff alleges in his misrepresentation claim that the Home Depot represented that its employees "possessed the knowledge and expertise required to review the Construction Plans and to order Anderson products as specified in the Construction Plans" but that the Home Depot knew or should have known that its employees lacked the knowledge, experience, or

---

[2]Although Plaintiff only amended the Complaint as to Anderson Windows, the Plaintiff added the following statement in his amended breach of contract count: "Home Depot's failure to properly order the windows on behalf of DeFebo is a breach of its contractual duty to supply DeFebo with the services necessary to properly review the Construction Plans and prepare the purchase orders for the windows specified therein." (Am. Compl. ¶ 44). This Court agreed to consider the Original Complaint for purposes of the Home Depot's Motion to Dismiss and has interpreted the allegations in that document as to the contractual relationship between Plaintiff and the Home Depot. However, this statement from the Amended Complaint confirms the Court's assessment of Plaintiff's contract theory as to the Home Depot.

training to review Plaintiff's plans and order the products. (Compl. ¶¶ 51, 53).

The allegations in these two Counts are nearly identical. Plaintiff asserts that he contracted for expert services, based on representations by the Home Depot, and those services were not rendered. Essentially, as evidence of the falsity of the Home Depot's representations, Plaintiff is relying on the Home Depot's inability to carry out its contractual allegations. These Counts are clearly intertwined and inseparable. In Tier1, the court considered a very similar situation where the plaintiff's breach of contract claim asserted that defendant had failed to provide the promised experience and abilities and the plaintiff's fraud and misrepresentation claims rested on a misrepresentation of that same experience and abilities. 2007 WL 1377664, at *3. Judge Hart found that the tort claims were "'inextricably intertwined' with [the defendant's] alleged failure to perform, as the claims pertain to [the defendant's representations regarding its expertise and abilities to perform its duties under the agreement . . . ." Id. at 4. The same outcome is warranted here. Thus, the gist of the action doctrine bars the misrepresentation claim. Count II will be dismissed.

### B.    Violation of UTPCPL (Count V)

As to Plaintiff's UTPCPL claim, Plaintiff argues that the economic loss doctrine bars the claim. The UTPCPL, 73 P.S. § 201-1, et. seq., generally prohibits fraudulent or deceptive conduct in commercial transactions and provides a party with a right to recover from an injury resulting from such conduct, § 201-9.2. Although the statute describes specific acts that constitute unfair trade practices, see § 201-2(4)(i) - (4)(xx), it also contains a catchall provision that prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," § 201-2(4)(xxi). This Court has previously noted that a

Plaintiff must prove all the elements of common law fraud to establish a claim for fraudulent or deceptive conduct under the catchall provision. Rock v. Voshell, 397 F. Supp. 2d 616, 622 (E.D. Pa. 2005); see also Toy v. Metro. Life Ins. Co., 928 A.2d 186, 201-203 (Pa. 2007) (reiterating that plaintiffs must prove the elements of common law fraud, including justifiable reliance, to recover under the UTPCPL). Plaintiff has not identified any particular act by the Home Depot in violation of § 201-2 and has instead alleged generally fraudulent conduct and misrepresentations. As such, this Court assumes Plaintiff brings its claim under the catchall provision and thus must prove the elements of fraud.

The Home Depot correctly points out that Plaintiff's Complaint is slightly ambiguous as to whether he is bringing a claim under the UTPCPL for intentional or negligent misrepresentation. However, the Home Depot argues that under either theory of misrepresentation, the economic loss doctrine bars the claim. In response, Plaintiff does not dispute that negligent misrepresentation claims are barred, but instead contends that its claim is clearly one for intentional, or fraudulent, misrepresentation, and that Pennsylvania recognizes an exception to the economic loss doctrine for both claims. Because this Court rejects Plaintiff's argument and finds that the doctrine would apply to the intentional fraud claim brought here, it need not determine the exact nature of Plaintiff's fraud claim.

Under Pennsylvania law, "the economic loss doctrine provides that 'no cause of action could be maintained in tort for negligence or strict liability where the only injury was 'economic loss'-that is, loss that is neither physical injury nor damage to tangible property.'" Roch v. Voshell, 397 F. Supp. 2d 616, 627 (E.D. Pa. 2005) (quoting 2-J Corp. v. Tice, 126 F.3d 539, 541 (3d Cir.1997)). In addition, courts have held that the economic loss doctrine "prohibits plaintiffs

from recovering in tort economic losses to which their entitlement flows only from a contract." Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir.1995). While it is well-settled that the economic loss doctrine bars negligence claims under Pennsylvania law, Sanchez v. Feretti, Inc., 2008 WL 2517177, at *3 (E.D. Pa. June 20, 2008) (Sitarski, M.J.), the application of the doctrine to intentional tort claims remains unsettled, Werwinski v. Ford Motor Co., 286 F.3d 661, 675 (3d Cir. 2002).

In Werwinski, the Third Circuit held that there was no exception to the economic loss doctrine for intentional tort claims under Pennsylvania law. Id. at 674. Although the state Supreme Court had yet to address the issue, the Third Circuit predicted that the Pennsylvania Supreme Court would likely apply the doctrine to intentional fraud claims under the UTPCPL. Id. at 680. In reaching this conclusion, the Court relied on two decisions from other states, Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc., 532 N.W.2d 541, 545 (Mich. App. 1995) and Rich Prod. Corp. v. Kemutec, Inc., 66 F. Supp. 2d 937, 977-80 (E.D. Wis. 1999), both of which held that a fraud-in-the-inducement claim is actionable, despite the economic loss doctrine, *if* the fraud is extraneous to the alleged breach of contract. The Werwinski Court explained that where the allegedly fraudulent misrepresentations concerned the quality of goods that are the subject of a contract, the tort claims are clearly intertwined with, rather than extraneous to, the contract claims. 286 F.3d at 678. Furthermore, "the alleged fraudulent concealment did not cause harms to the plaintiffs distinct from those cause by the breach of contract." Id. (citations omitted). Thus, the court held that the economic loss doctrine barred the claim. Id.

In reaching its conclusion, the Third Circuit considered the arguments of the parties,

noting that both parties "provided plausible explanations for their respective positions" as to whether intentional torts were an exception to the doctrine. Id. at 679. However, he court also recognized that Pennsylvania courts have expressed a willingness to restrict intentional tort claims that overlap with contract claims, as evidenced by the gist of the action doctrine. Id. at 680. Finally, when faced with "two competing yet sensible interpretations of Pennsylvania law," the Court explained that it "should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." Id.

To challenge the application of Werwinski here, Plaintiff points to a subsequent decision by Judge Van Antwerpen, as a district judge, which expressly disagreed with Werinski and held that an exception for all intentional tort claims exists under Pennsylvania law. O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. 266, 275 (E.D. Pa. 2003). Judge Van Antwerpen found that the Third Circuit's decision was not in harmony with Pennsylvania law for several reasons, including:

> (1) Pennsylvania common law may not overrule legislative intent and violate a statute; (2) Pennsylvania courts have refused to apply the economic loss doctrine in consumer common law intentional fraud suits; (3) Pennsylvania Courts have allowed treble damage awards in consumer fraud cases pursuant to the UTPCPL without reference to the economic loss doctrine; (4) Pennsylvania courts since Werwinski have continued to do so; and (5) the panel based its decision entirely on a U.S. District Court for the Western District of Wisconsin case applying Wisconsin law. . . .

Id. at 275.

The concerns expressed in O'Keefe are not without merit. First, several lower Pennsylvania state courts have explicitly held that intentional torts are generally excepted from the economic loss doctrine. See, e.g., Paola Amico v. Radius Commc'ns, 2001 WL 1807924, at

-13-

*3 (Pa. Com. Pl. Jan. 9, 2001) (applying doctrine to fraud claims); First Republic Bank v. Brand, 2001 WL 33394627, 50 Pa. D. & C.4th 329, 340-31 (Pa. Com. Pl. Dec. 19, 2000) (applying doctrine to fraudulent misrepresentation claims).  Likewise, several cases in lower Pennsylvania courts have subsequently rejected the Third Circuit's prediction that the Pennsylvania Supreme Court would recognize such an exception.  See, e.g., Smith v. Reinhardt, 2004 WL 3092495, 68 Pa. D. & C. 4th 432, 437-38 (Pa Com. Pl. Sept. 29, 2004); Grant v. Bridgestone Firestone, 2002 WL 372941, at *5 (Pa. Com. Pl. Jan. 10, 2002).

However, neither of those positions are unanimously supported by the lower state courts. For example, in Ellenbogen v. PNC Bank, the state Superior court noted that the doctrine bars recovery from purely economic losses suffered as a result of the defendant's "negligent *or* otherwise tortious behavior." 731 A.2d 175, 188-89 n.26 (Pa. Super. 1999) (emphasis added). Furthermore, in Zwiercan v. General Motors Corp., a lower state court agreed with the Third Circuit in Werwinski to the extent that the doctrine barred claims under the UTPCPL in some cases, though it held that the doctrine did not apply where the plaintiff did not otherwise have a valid breach of contract claim and was not bringing the tort action in lieu of a contract action. 2002 WL 31053838, at *7 (Pa. Com. Pl. Sept. 11, 2002).  Moreover, as to Judge Van Antwerpen's concern about allowing a common law rule to modify a statutory right, this Court notes that the parol evidence rule, a common law doctrine, has often been applied by the Pennsylvania Supreme Court to the UTPCPL.  See, e.g., Toy, 928 A.2d at 48-52; Yocca v. Pittsburgh Steelers, 854 A.2d 425, 501-02. (Pa. 2004).

Despite these seemingly conflicting holdings, this Court is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an

issue. See Mansmann v. Tuman, 970 F. Supp. 389, 402 (E.D. Pa. 1997) ("The Third Circuit's interpretation of Pennsylvania law is binding on the district court . . . ."); Cohen v. Am. Int'l Ins. Co., 1996 WL 103793, at * 3 (E.D. Pa. March 7, 1996) (Yohn, J.) (explaining that a Third Circuit opinion is binding on the district court in the absence of a contradictory decision from the Third Circuit or Pennsylvania Supreme Court and that the Third Circuit's prediction is independent from, and need not follow, decisions by the intermediate state courts). At the same time, the "conclusions of other courts in this district are not binding on this court." Superior Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 449 (E.D. Pa. 1999).

Notably, since Werwinski and O'Keefe, at least one other Judge in this district has considered this issue. In Sanchez, Magistrate Judge Sitarski followed the decision in Werwinski, holding the economic loss doctrine barred the fraud claims because those claims were inextricably intertwined with the breach of contract claim. 2008 WL 2517177, at *3-4. Similarly, in Heindel v. Pfizer, a judge in the District of New Jersey, applying Pennsylvania law, applied the holding in Werwinski, noting that it was bound by the Third Circuit's prediction. 381 F. Supp. 2d 364, 385-86 (D.N.J. 2004). That court noted that neither the decision in O'Keefe nor the lower state court decisions were binding in light of the Third Circuit's holding. Id.

This Court will likewise follow the decision in Werwinksi, as it is bound to do, until the Pennsylvania Supreme Court addresses the issue. As noted above, the intentional fraud claims are clearly interwoven with the breach of contract claim, as was the situation in Werwinski. Thus, the exception to the economic loss doctrine for fraud-in-the-inducement claims does not apply and the doctrine bars Plaintiff's intentional fraud claim under the UTPCPL. As such, the Court will not address the Home Depot's arguments regarding the application of the parol

evidence rule. Home Depot's claims of inadequate pleading are rejected. Therefore, Count V will therefore be dismissed with leave to amend.

Although it is not clear that Plaintiff has recourse under the UTPCPL, the Court will grant Plaintiff 14 days to amend this Count to state a claim that has been approved by a court applying Pennsylvania law. For example, Plaintiff may allege facts that support a claim for damages that does not implicate the economic loss doctrine or that falls within the exception to that doctrine for fraud claims that are not intertwined with breach of contract claims. This Court does not now rule that such a cause of action necessarily exists in this case, but it will not deprive Plaintiff of an opportunity to amend the Complaint to assert a valid claim. Plaintiff should avoid any claims that would be foreclosed by the parol evidence rule, though the Court expresses no opinion on the application of that rule at this time.

Though the lengthy discussion above is necessary because the Plaintiff has tried to turn a contract claim into a tort claim, Plaintiff's breach of contract and breach of warranty claims will proceed and should provide Plaintiff with relief if his claims are proven at trial.

O:\CIVIL 09-10\09-2993 Defebo v. Andersen\Home Depot's Mtd Memo.wpd