IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL DeFEBO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No.09-2993 |
| | : | |
| ANDERSEN WINDOWS, INC., | : | |
| and HOME DEPOT U.S.A., INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM RE: MOTION TO DISMISS**

**Baylson, J.**                                                                                           **September 24, 2009**

Presently before the Court is Defendant Andersen Window's (hereinafter, "Andersen") Motion to Dismiss Counts I, III, and V of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). As this Court noted in its prior Memorandum in this case addressing Defendant Home Depot's Motion to Dismiss, the subject dispute arises between a purchaser of windows and the seller and manufacturer of those windows. DeFebo v. Andersen Windows, Inc., 2009 WL 2837684, at *1-2 (E.D. Pa. September 03, 2009). For the following reasons, this Court will deny Andersen's Motion to Dismiss.

**I.      Facts and Procedural History**

Plaintiff brought this action against Andersen Windows and the Home Depot after he was allegedly unable to install jamb extensions onto windows specially ordered from Home Depot. Plaintiff alleged that the installation problems were due to a misalignment between the arched windows and the casement windows, which were allegedly manufactured by Andersen Windows. Plaintiff also included allegations of problems with several other Andersen products, ordered

-1-

from the Home Depot, including a door and other windows. According to the Complaint, after several attempts to have the Home Depot and Andersen Windows address the problem and finally purchasing new products from a different manufacturer, Plaintiff filed his suit seeking consequential and incidental damages. In its Memorandum addressing the Motion to Dismiss filed by Defendant Home Depot, this Court described in more detail the factual allegations in this case. See DeFebo, 2009 WL 2837684, at *1-2. The Court will not repeat those details now and will assume the parties' familiarity with the facts.

In response to Andersen's first Motion to Dismiss (Doc. 5), Plaintiff filed the operative Amended Complaint (Doc. 11) on July 29, 2009. The Amended Complaint asserts three claims against Andersen: (1) breach of contract (Count I); (2) breach of express warranty (Count III); and (3) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter, "UTPCPL"), 73 P.S. 201-1, et seq. (Count V). Notably, the UTPCPL claim is based on Andersen's alleged breach of warranty, which is identified as an unfair trade practice in 73 P.S. 201-2(4)(xiv). Both Count III and Count V rely on a written Limited Warranty that Plaintiff allegedly received from Andersen and which is attached to the Complaint as Exhibit B.[1] Andersen now moves to dismiss all three counts.

## II.     Parties' Arguments

### A.     Andersen's Arguments

---

[1] Plaintiff actually failed to attach any exhibits to the Amended Complaint, although the Amended Complaint refers to both an Exhibit A and an Exhibit B. However, Plaintiff did attach exhibits with the same labels to its Original Complaint, and based on the argument in the briefing, it appears both parties are relying on the exhibits to the Original Complaint. Thus, to avoid expending additional time and effort by requiring Plaintiff to refile the Amended Complaint with the exhibits, this Court will rely on the exhibits attached to the Original Complaint.

Andersen argues that both the breach of contract and breach of express warranty claims should be dismissed for failing to comply with the pleading standard under Fed. R. Civ. P. 8, as expounded in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  As to the breach of contract claim, Andersen asserts that Plaintiff does not describe with sufficient detail the nature of the alleged contract between Andersen and Home Depot, but instead merely asserts that such a contract exists and that Plaintiff was a third party beneficiary of the contract.  Similarly, with respect to the breach of express warranty claim, Andersen contends that Plaintiff has not alleged that Andersen provided an express warranty covering Plaintiff's chief complaint, namely that the windows and doors Andersen manufactured did not comply with Plaintiff's construction plans. Rather, Andersen contends that the warranty only covered defects in manufacture, material, and workmanship and that Plaintiff did not allege such defects.  Andersen also argues that there are no allegations in the Complaint that it did not supply the products actually ordered by Home Depot and that even if an express warranty covering Plaintiff's complaints existed, Plaintiff has not provided sufficient allegations that Andersen failed to comply with that warranty.

Similarly, Andersen suggests that the UTPCPL claim must be dismissed because Plaintiff did not allege that the products it received suffered from defects in manufacturing, materials, or workmanship.  In addition, Andersen argues that it did respond to Plaintiff's complaints, as Plaintiff admits in the factual allegations, and thus, Plaintiff has not sufficiently alleged that Andersen did not comply with the terms of the warranty.  Alternatively, Andersen reasons that even if the Limited Warranty covered the defects complained of, the economic loss doctrine bars the claim under the UTPCPL.  Andersen relies on the decision in Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), in which the Third Circuit applied the doctrine to fraud claims

brought under the UTPCPL.

Finally, Andersen suggests that all three Counts must be dismissed because they seek consequential and incidental damages barred by the subject warranty, which provides for limited recovery in the event of a breach of warranty. Andersen relies on § 2-719 of the Uniform Commercial Code, 13 Pa. C.S. § 2719, which allows a seller to limit the remedies of a buyer to either return of the goods and repayment of the purchase price or to repair and replacement of the nonconforming goods.

### B. Plaintiff's Arguments

Plaintiff responds that it has sufficiently alleged facts supporting the existence of a contract between Andersen and Home Depot as well as Plaintiff's status as a third party beneficiary of that contract. Plaintiff notes that Andersen does not deny the existence of such a contract but merely argues that Plaintiff is not an intended beneficiary.

As to Count III, Plaintiff contends that it has pleaded a defect to the manufacture, material, or workmanship of the products provided by Andersen. According to Plaintiff, the Amended Complaint specifically alleges that installation of the window jambs is impossible due to an obstruction over the windows and misalignment of the window frames, which was allegedly caused by Andersen's improper mulling of the windows. Plaintiff further alleged that certain windows are misaligned, that the patio door is assymetrical, and that the garage doors do not open in the proper direction. According to Plaintiff, all of these conditions are defective for purposes of the Limited Warranty. Finally, the Complaint alleges that an Andersen representative  acknowledged the problem and agreed to remedy it.

Turning to Count V, Plaintiff suggests that it has properly pleaded all of the essential

elements for a claim under the UTPCPL. Again, Plaintiff contends that it did plead a defective condition covered under the warranty and that Andersen had not remedied the problem, as promised, despite Plaintiff attempting to contact Andersen on several occasions. Furthermore, Plaintiff argues that the economic loss doctrine does not apply to statutory claims and suggests that there is significant authority opposing the decision in Werwinski.

Finally, with respect to the issue of consequential and incidental damages, Plaintiff argues that the Pennsylvania statute only allows parties to limit such remedies if the limitation is not unconscionable or if the circumstances cause the limited remedy to fail of its essential purpose. Plaintiff argues it has alleged that Andersen attempted to send replacement parts, but those parts were still unusable because the windows were defective, and thus the limited remedy failed in this instance.

### III.   Legal Standards

#### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

#### B.   Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 129 S. Ct. at 1953.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

## IV. Discussion

### A. Breach of Contract (Count I)

Plaintiff's complaint alleges: "Andersen's failure to manufacture and/or supply the windows in accordance with Home Depot's properly prepared purchase orders is a breach of its

contractual duty to supply DeFebo with the windows described in Exhibit A."  (Am. Compl. ¶ 48).  As noted above, Anderson suggests that Plaintiff failed to allege specific facts regarding a contract between Anderson and Home Depot and that Plaintiff cannot therefore support his allegation that he was a third party beneficiary of that contract.  Under the Supreme Court's recent decision in Iqbal, to survive a motion to dismiss the complaint must state a claim for relief that is facially plausible, which requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S. Ct. at 1949.  Reiterating its prior decision in Twombly, the Iqbal Court explained that Rule 8 does not require detailed factual allegations but does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.  Thus, any legal conclusions alleged in the complaint must be supported by factual allegations.  Id. at 1950.

      In Twombly, the Supreme Court considered whether the allegations in the complaint supported the plaintiff's claim of conspiracy.  In particular, the Court was concerned with the factual support for Plaintiff's allegation that an agreement existed between the defendants to engage in anti-competitive behavior in violation of the Sherman Act.  550 U.S. at 556.  Finding that the factual allegations of parallel conduct were insufficient to allow an inference that such agreement existed, the Court reasoned that such parallel conduct could easily be explained as independent, self-interested action.  Id. at 557, 566.  The Supreme Court cited to a First Circuit case, which noted that "terms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation-for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint."  DM Research, Inc. v. College of Am.

Pathologists, 170 F.3d 53, 56 (1st Cir. 1999).  Similarly, in Iqbal the Supreme Court agreed that allegations that the FBI detained thousands of Muslim men was consistent with the theory that the FBI purposefully acted on the basis of race, religion, or natural origin, but held that those allegations were also consistent with more likely explanations and thus did not establish plausibility of improper purpose.  129 S. Ct. at 1951.

Given these pleading standards, this Court must determine if Plaintiff's Amended Complaint contains sufficient factual allegations to support both the existence of the alleged contract between Anderson and the Home Depot as well as Plaintiff's status as a third party beneficiary of that contract.

### 1.  Alleged Contract Between Andersen and Home Depot

Plaintiff's Complaint includes nearly forty paragraphs of factual allegations to support his claims for relief.  Those allegations describe in detail how Plaintiff contracted with Home Depot to purchase windows and other materials, specifically manufactured by Anderson, that complied with Plaintiff's construction plans.  (Am. Compl. ¶¶ 6-10).  Plaintiff alleges that it received the Andersen products from the Home Depot.  (Am. Compl.  ¶¶ 10-11).  After describing the problems Plaintiff experienced installing those items, Plaintiff also alleges that it contacted both Anderson and Home Depot and that the Home Depot "requested that Michael Bellizia, a representative of Anderson Windows and a certified Anderson Windows repairman, contact Defebo . . . ."  (Am. Compl. ¶ 20).  Plaintiff further alleges that representatives of both Anderson and the Home Depot met with him at his property to inspect the allegedly defective items and those parties agreed to remedy the problems.  (Am. Compl. ¶¶ 28-30).

Taking those allegations as true, Plaintiff has clearly alleged the existence of some

relationship between the two Defendants. Plaintiff specifically alleged that Home Depot agreed to obtain windows made by Anderson for the Plaintiff, thus suggesting that Home Depot made some arrangement with Anderson for those materials. The allegations also show that Home Depot contacted Anderson on behalf of Plaintiff when there was a problem with the order and that the two parties were jointly involved in attempting to remedy the order, both of which also support the inference of a relationship between the parties. These facts, if true, suggest that, at the least, Home Depot had a tacit agreement with Anderson through which the Home Depot obtained the requested materials for the Plaintiff. The pleadings here are not merely thread-bare recitals of the elements of a cause of action, but include factual support for the legal conclusion that an agreement existed.[2]

Unlike the circumstances in both Twombly and Iqbal, the behavior of the Defendants is not easily explained by more likely alternatives, and Andersen has notably not suggested any alternative explanation for its provision of the windows to Home Depot for Plaintiff. Common sense dictates that when retailers obtain products from manufacturers to sell to their customers,

---

[2]The absence of the actual agreement as an attachment to the Complaint does not negate the inference that a contract exists or the facts supporting that inference. Recently, in denying a Motion under Rule 12(e), Judge Surrick rejected the defendant's argument that the second amended complaint failed to comply with Rule 8 because the plaintiff did not identify the contract at issue in the breach of contract claim. Transport International Pool, Inc. v. Ross Stores, Inc., 2009 WL 1033601, at *2 (E.D. Pa. Apr. 15, 2009). The court noted that "[a] plaintiff pleading breach of contract in federal court does not need to attach the contract to the complaint." Id. at 3.

Furthermore, Judge Surrick explained that a plaintiff who alleges the existence of a contract according to its legal effect does not need to resort to a "formulaic recitation of the elements of the alleged contract; rather the complaint must allege facts sufficient to place the defendant on notice of the contract claim in a way that the defendant can reasonably respond." Id. Certainly, the allegations in the Complaint here put Andersen on notice of the type the nature of Plaintiff's contract claims and allow for Defendants to reasonably respond to those claims.

the transaction is pursuant to a contract. Plaintiff went beyond that natural inference, pleading specific facts that suggest a commercial relationship between the Defendants.

### 2. Plaintiff's Third Party Beneficiary Status

Similarly, Plaintiff has provided sufficient factual allegations for his claim that he is a third party beneficiary of the alleged contract. Under Pennsylvania law, a party must satisfy a two part test, adopted from § 302 of the Restatement (Second) of Contracts, to be deemed a third party beneficiary: "(1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Burks v. Fed. Ins. Co., 883 A.2d 1086, 1088 (Pa. Super. 2005) (citing Guy v. Liederbach, 459 A.2d 744, 751 (Pa. 1983)). To achieve third party beneficiary status, a "party must show that both parties to the contract so intended, and that such intent was within the parties' contemplation at the time the contract was formed." Id.

Plaintiff alleged that Home Depot obtained the windows from Andersen upon Plaintiff's request and using the construction plans that Plaintiff supplied. The windows were specially ordered from Andersen by Home Depot to satisfy Plaintiff's plans. Plaintiff has alleged, therefore, that the specific agreement between Home Depot and Andersen for the Plaintiff's windows was entered into because of Plaintiff's request and for Plaintiff's direct benefit. Plaintiff has certainly suggested through these allegations that the parties intended for Plaintiff to be a beneficiary of the alleged agreement in which Andersen provided windows to Home Depot for sale to Plaintiff. Taking the factual allegations as true, this Court cannot conclude that under

Pennsylvania law, as described above, the Plaintiff "is not a third party beneficiary of the contract[] under any possible factual circumstance[,]" and therefore this Court "must await the benefit of discovery and development of the factual record . . . ." De Lage Landen v. Rasa Floors, LP, 2009 WL 884114, at *9 (E.D. Pa. March 31, 2009). Plaintiff has therefore met the plausibility standard propounded in Iqbal with respect to his assertion that he is a third party beneficiary of a contract between the Defendants.

### B. Breach of Express Warranty (Count III)

As with Count I, Andersen argues that Plaintiff has not adequately pleaded facts to support his breach of express warranty claim. The Limited Warranty provided by Andersen only protects the Plaintiff against defects arising from the manufacture, materials, or workmanship of the products. (Compl. Ex. B). Andersen contends that Plaintiff's allegations pertain to Andersen's failure to provide products that match Plaintiff's specifications, rather than to any defects in the products actually provided.

Contrary to Andersen's contention, the Complaint shows that Plaintiff sufficiently alleged that Andersen's products were deficient in terms of manufacture, material, or workmanship to survive a motion to dismiss. For example, Plaintiff alleges that he could not install the window jamb extension because "when Andersen mulled the arched windows together with the casement windows, the top of the casement window frame and the bottom of the arch window frame formed an obstruction." (Am. Compl. ¶ 16). Plaintiff asserts that he notified Andersen of that defective condition in the casement/arch window units and that Andersen even agreed that the jamb extensions should be fixed by Andersen. (Am. Compl. ¶¶ 22-23, 29). Notably, the Complaint also alleges that Andersen actually sent replacement parts, (Am. Compl. ¶ 22-23),

which is the specific remedy available under the warranty for products found to be defective in manufacture, material, or workmanship.  Taking these facts as true, Plaintiff has stated a claim for breach of the express warranty.

As Andersen points out, Plaintiff's Complaint also contains numerous allegations that concern the failure of the products received to conform to the Plaintiff's construction plans, though most of these allegations are directed at Home Depot.  Indeed, the gist of Plaintiff's claims against the Home Depot are that the Home Depot breached its contract with Plaintiff by providing the incorrect windows  (Am.  Compl. ¶ 41, 42, 44) and that the Home Depot misrepresented itself as an expert in ordering windows, as evidenced by its failure to properly order the windows for Plaintiff.  (Am. Compl. ¶¶ 51, 56).  These facts, which pertain to the Home Depot, do not impact the viability of Plaintiff's claim for breach of warranty against Andersen.

Plaintiff also alleges in his breach of warranty claim that Andersen failed to manufacture or supply the windows in accordance with Home Depot's properly prepared purchase orders. (Am. Compl. ¶¶ 47, 48).  Plaintiff similarly alleged that the doors and windows it received were of different sizes and proportions than those indicated in the plans. (Am. Compl. ¶¶ 18(a)-(I). Andersen correctly suggests that those allegations concern a problem not with defective products but with a failure to comply with the purchase order.   However, allegations about Andersen's noncompliance with the order do not negate the allegations pertaining to the improper construction of the jamb extensions, noted above.  Iqbal requires only that the Plaintiff include factual support for the legal conclusions in the Complaint.  Although Plaintiff may have alleged facts that do not support the warranty claim or that support claims based on another legal theory,

the only relevant question for the breach of warranty claim is whether Plaintiff alleged facts supporting that claim. At this stage, on a motion to dismiss, the Court will not dismiss a cause of action where the Plaintiff alleges sufficient facts to support the claim.[3]

### C. Violation of the UTPCPL (Count V)

#### 1. Insufficient Pleading

Plaintiff's UTPCPL claim also derives from Andersen's alleged breach of warranty, which is an unfair trade practice under the statute. Andersen again claims that Plaintiff did not allege that the products were defective in terms of manufacture, material, or workmanship but only that Andersen did not provide products that complied with construction plans. For the reasons previously noted with respect to the breach of warranty claim, this argument fails.

Andersen also argues that Plaintiff did not allege that Andersen failed to satisfy its obligations under the warranty and thus his UTPCPL cannot proceed. According to Andersen, Plaintiff even alleges in the Complaint that Andersen attempted to remedy the problem by visiting Plaintiff's home and shipping replacement parts. This Court must once again reject

---

[3] In its Reply Brief, Andersen also suggests that Plaintiff cannot be a third party beneficiary under the § 2-318 of the UCC, 13 Pa. C.S. § 2318. That section states:
> The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.

Although Plaintiff would not qualify under that definition, Note 3 to this Section explains that the Section is meant to expressly include those persons described but is neutral as to other possible third party beneficiaries. Specifically, the section is "not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain." 13 Pa. C.S. § 2318, Note 3. As Plaintiff is another person in the distributive chain and has otherwise sufficiently pleaded that it may be a third party beneficiary to a contract between Andersen and the Home Depot, this statute does not bar that cause of action.

Andersen's argument. Although Andersen accurately points out that Plaintiff acknowledges in the Amended Complaint that an Andersen representative visited Plaintiff's house and agreed to ship a second set of replacement parts (Am. Compl. ¶¶ 28-31), Andersen fails to note that Plaintiff then alleges that he never received the new products (Am. Compl. ¶¶ 32, 37). Plaintiff alleges that from April 2008 until September 2008, he attempted to contact representatives from both Defendants but received no response to his inquiries about the replacement parts for the door or windows. (Am. Compl. ¶¶ 33, 37). At that time, Plaintiff decided to purchase new products and hired a contractor to build new windows in order to proceed with the construction of his home. (Am. Compl. ¶¶ 34, 38). These factual allegations are clearly sufficient at this stage to support Plaintiff's claim that Andersen failed to comply with the terms of the Warranty.

### 2. Economic Loss Doctrine

In the alternative, Andersen contends that the UTPCPL claim is barred by the economic loss doctrine. Under Pennsylvania law, "the economic loss doctrine provides that 'no cause of action could be maintained in tort for negligence or strict liability where the only injury was 'economic loss'-that is, loss that is neither physical injury nor damage to tangible property.'" Roch v. Voshell, 397 F. Supp. 2d 616, 627 (E.D. Pa. 2005) (quoting 2-J Corp. v. Tice, 126 F.3d 539, 541 (3d Cir.1997)). Andersen, relying on the Third Circuit's decision in Werwinski v. Ford Motor Co., 286 F.3d 661, 681(3d Cir. 2002), contends that the doctrine bars Plaintiff's statutory claims brought under the UTPCPL. In response, Plaintiff notes that several subsequent cases have cast doubt on the viability of the holding in Werwinski, which extended the doctrine to intentional, statutory tort claims.

In its previous Memorandum in this case, this Court discussed the Werwinski decision,

ultimately concluding that it would follow the Third Circuit's holding in that case. DeFebo, 2009 WL 2837684, at *8-9 (E.D. Pa. Sept. 3, 2009). However, the decision in Werwinski, and the economic loss doctrine itself, are actually irrelevant to Plaintiff's UTPCPL claim against Andersen. While Plaintiff's UTPCPL claim against the Home Depot concerned tort claims of intentional fraud and misrepresentation, Plaintiff's statutory claim against Andersen is based on breach of warranty, a contract claim. The economic loss doctrine specifically bars tort claims that sound in contract; the doctrine is simply not implicated where the subject claims are based in contract.

      Notably, the Werwinksi court affirmed the decision of the district court, which had dismissed the claims for fraudulent concealment and the UTPCPL fraud claim under the economic loss doctrine but had retained the common law breach of express warranty claim. 286 F.3d at 665. In finding that the economic loss doctrine applied to the UTPCPL claims and that no exception for intentional fraud claims exists, the Court focused on the plaintiff's ability to recover under his breach of warranty claims. Id. at 680. The court specifically found that the fraud claims were intertwined, rather than extraneous to, the breach of warranty claims. Id. at 678. The Third Circuit's decision thus makes abundantly clear that the economic loss doctrine does not apply to breach of warranty claims; in fact, the possibility of such contract claims provided a justification for applying the doctrine to the statutory intentional fraud claims. See also Stnehard v. Advanced Glassfiber Yarns, Inc., 2001 WL 1807359, at *1-2 (Pa. Com. Pl. Nov. 21, 2001) (assessing whether the economic loss doctrine barred claims for negligence, negligent installation, and strict liability but noting that the objections to the breach of express and implied warranty claims were limited to assertions concerning the right to recover under the UCC).

The breach of warranty claim allowed to proceed in <u>Werwinski</u> was admittedly based in common law whereas the breach of warranty claim here was brought under the UTPCPL. However, in reaching its conclusion, the <u>Werwinksi</u> court reasoned that the doctrine treated statutory and common law fraud claims similarly.  286 F.3d at 681.  Likewise, this Court finds that the doctrine treats statutory and common law contract claims similarly; that is, the doctrine does not bar such claims.  The purpose of the doctrine is to prevent claims based in tort that only allege economic losses from proceeding, in part because those losses can be compensated through contract remedies.  Quite simply, applying the doctrine to the statutory contract claims would serve no purpose.

Therefore, this Court holds that Plaintiff has properly plead its UTPCPL claim and that the economic loss doctrine does not bar the claim.

      **D.**      **Consequential and Incidental Damages**

As a final attempt to dismiss the claims against it, Andersen argues that the warranty bars consequential or incidental damages, which the Plaintiff requests in all three counts.  Andersen notes that under § 2-719 of the UCC, 13 Pa. C.S. § 2719, a seller may limit remedies available. Plaintiff agrees that the statute does allow for such limitations on remedies, but asserts that the statute allows for other remedies where the limitation fails of its essential purpose or is unconscionable.  <u>See</u> 13 Pa. C.S. § 2719(b) and (c).

As to the breach of contract claim in Count I, Andersen's argument carries no weight. The Limited Warranty restricts the remedies available to a plaintiff claiming that Andersen breached that warranty.  The warranty does not address remedies available in a breach of contract claim based on a alleged contract between Andersen and the retailer of its goods and to which the

buyer of Andersen's products is an alleged third party beneficiary.

With respect to Counts III and V, which involve breach of warranty, this Court will not dismiss those properly pleaded claims at this stage due to the Warranty's limitation on damages. Although "under Pennsylvania law, limitation of liability clauses in commercial contracts generally are valid and enforced by the courts," Amsan, LLC v. Prophet 21, Inc., 2001 WL 1231819, at *2 (E.D. Pa. Oct. 15, 2001) (Reed, J.), Plaintiff has suggested here that the limitation either fails of its essential purpose or is unconscionable. This Court will not make a determination as to those arguments at this stage of the litigation, prior to discovery.

Notably in Amsan, as in the instant case, the plaintiff asserted that the defendant refused to repair or replace the product at issue, which was the only remedy available under the warranty. The court there concluded that plaintiff had thus alleged that the exclusive remedy failed in its essential purpose. Amsan, 2001 WL 1231819, at *2. Here, Andersen disputes that it did not comply with the warranty and asserts that it provided the promised remedy, thus presenting a similar issue of fact as to the applicability of the warranty.

Furthermore, Plaintiff may have a viable argument that the limitation is unconscionable. "The test for unconscionability is two-fold: (1) whether one of the parties lacked a meaningful choice about whether to accept the provision [or contract] in question; and (2) whether the challenged provision or contract unreasonably favored the other party to the contract." Choice v. Option One Mortg. Corp., 2003 WL 22097455, at *5 n.10 (E.D. Pa. May 13, 2003) (Yohn, J.) (citing Hornberger v. General Motors Corp., 929 F. Supp. 884, 891 (E.D. Pa.1996)). Based on the allegations in the Amended Complaint, Plaintiff at least has a plausible argument that the limitation on available remedies was unconscionable under this test. Thus, this Court rejects

Andersen's argument that Plaintiff's remedies are necessarily limited by the warranty where Plaintiff has alleged facts that could support a finding that the limitation is invalid.

**V.     Conclusion**

For the foregoing reasons, this Court will deny Defendant's Motion to Dismiss Counts I, III, and V.  Plaintiff has sufficiently pleaded facts to support his claims for breach of contract and breach of warranty.  Furthermore, Plaintiff's UTPCPL claim is not barred by the economic loss doctrine and the limitation on remedies in the warranty does not require dismissal of the claims at this time.

An appropriate order follows.

O:\CIVIL 09-10\09-2993 Defebo v. Andersen\Andersen Window's Mtd Memo.wpd