**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DANIEL DEFEBO,** | Civil Action No. 2:09-CV-02993 |
| **Plaintiff,** | |
| **vs.** | Before The Honorable Michael M. Baylson |
| **ANDERSEN WINDOWS, INC. AND HOME DEPOT USA, INC., D/B/A THE HOME DEPOT** | |
| **Defendants.** | |

**BRIEF IN SUPPORT OF OPPOSITION TO MOTION OF DEFENDANT HOME DEPOT USA, INC., D/B/A THE HOME DEPOT TO DISMISS COUNT IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, Daniel DeFebo ("Plaintiff"), opposes the Motion Of Defendant Home Depot USA, Inc., d/b/a The Home Depot ("Home Depot") To Dismiss Count IV of Plaintiff's Second Amended Complaint (the "Motion") in support thereof files this Brief In Opposition To The Motion.

**I.   INTRODUCTION**

This case involves Plaintiff's purchase from Home Depot of nearly $100,000 worth of windows, manufactured by defendant Andersen Windows, Inc. ("Andersen"), for his dream home.  Shortly after the windows were installed, Plaintiff's representatives attempted to install the window jambs manufactured by Andersen but were unable to do so as the windows and parts were defective.  Despite numerous visits to the Property wherein Home Depot and Andersen acknowledged the problem with the windows and window jambs, and repeated promises to remedy the problem, Home Depot and Andersen did nothing, forcing Plaintiff to hire a contractor to fabricate replacement parts for Andersen's defective windows which were ordered

by Home Depot. As a result of Andersen's defective windows and window jambs, ordered by Home Depot, and failure to cure the defect, Plaintiff has been damaged.

## II.   STATEMENT OF FACTS

As set forth in Plaintiff's well-pleaded Second Amended Complaint, Plaintiff purchased nearly $100,000 worth of windows from Home Depot based upon Home Depot's representations to the public that it was an expert in supplying construction materials, including related services such as reviewing construction plans to determine the materials required to meet the specifications set forth. See Second Amended Complaint ¶¶ 6, 7, 8, 9. Home Depot reviewed the construction plans prepared by a Pennsylvania registered architect (the "Plans"), prepared invoices and ordered the windows accordingly. See Second Amended Complaint ¶¶ 7, 8, 9. The windows were manufactured by Andersen. See Second Amended Complaint ¶¶ 6, 7. Plaintiff paid Home Depot the sum of Ninety Six Thousand Seventeen Dollars and Sixty Four Cents ($96,017.64) for the windows.

Shortly after the Andersen windows were installed, Plaintiff's contractor attempted to install the window jambs, also ordered by Home Depot and manufactured by Andersen, but was unable to do so as they did not fit. See Second Amended Complaint ¶¶ 15, 16, 17. Plaintiff's contractor determined that Andersen had improperly mulled the windows together, creating an obstruction which prevented the installation of the window jambs. See Second Amended Complaint ¶¶ 18, 19. In addition, Plaintiff's contractor discovered that, despite what was called for on Plaintiff's construction plans, Home Depot ordered and Andersen improperly supplied (a) windows of different sizes for the two-story great room, (b) a patio door and transom unit that was asymmetrical, and (c) casement windows for the garage that failed to open in the opposite direction. See Second Amended Complaint ¶ 20.

2

Upon discovery of these defects, Plaintiff contacted both Andersen and Home. <u>See</u> Second Amended Complaint ¶ 21. Both Andersen and Home Depot, agreed with Plaintiff that the window jambs could not be installed in the windows as manufactured, that the window units in the great room were of differing sizes, that the patio and transom unit were asymmetrical, and that the garage casement windows should have been supplied so that they would open in the opposite direction. <u>See</u> Second Amended Complaint ¶¶ 23, 24, 25, 26. In an effort to remedy the problem, Andersen supplied Plaintiff with new window jambs. <u>See</u> Second Amended Complaint ¶¶ 26. However, due to the defective conditions of the windows, specifically the improper mulling of the windows by Andersen, even the replacement window jambs could not be installed. <u>See</u> Second Amended Complaint ¶ 26.

After attempting to provide replacement parts which would cure the defect, Andersen and Home Depot again visited Plaintiff's property in an effort to correct the defective windows and window jambs. <u>See</u> Second Amended Complaint ¶¶ 29, 30, 31. At that meeting, Andersen and Home Depot each acknowledged that Plaintiff's problem was legitimate and required correction. <u>See</u> Second Amended Complaint ¶ 31. Andersen once again shipped Plaintiff replacement window jambs but again, because Andersen improperly mulled the windows together, the replacement window jambs could not be installed. <u>See</u> Second Amended Complaint ¶ 33. Although Andersen also promised to ship Plaintiff a properly fitted replacement transom unit to be installed over the patio door, it failed to do so. <u>See</u> Second Amended Complaint ¶¶ 33, 34, 35. Although Home Depot accepted the return of the transom unit, it did not refund the purchase price to Plaintiff. <u>See</u> Second Amended Complaint ¶ 37. Home Depot refused to accept the return of the patio door from Plaintiff. <u>See</u> Second Amended Complaint ¶ 38.

3

Thereafter, Home Depot and Andersen ignored Plaintiff's repeated calls for correction of the defective parts causing Plaintiff to incur additional expenses in having a contractor fabricate custom replacement parts. See Second Amended Complaint ¶¶ 39, 40, 41.  Although the windows are an integrated part of Plaintiff's custom home, the damages sustained by (a) the failure of the jamb extensions to fit, (b) the failure of windows to open in the proper direction, and (c) the failure of the windows in the great room to be of the same width, diminishes the value of Plaintiff's custom home. See Second Amended Complaint ¶ 42.

## III.    STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all allegations contained in the complaint. Associated General Contractors v. California State Council of Carpenters, 459 U.S. 519, 526 (1983); Colburn v. Upper Darby Township, 838 F.2d 663, 664-65 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989) (district court "must take all the well-pleaded allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief"); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998).  Only factual allegations will be deemed as true.  Legal conclusions, deductions or opinions couched as factual allegations are not deemed to be true. 2A J. Moore & J. Lucas, ¶12.07 [2.5] (2d ed. 1990). See also Brisco v. La Hue, 663 F.2d 713 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983).  A plaintiff cannot "simply mouth the conclusions of law" to avoid dismissal of his complaint as a court is free to disregard "bald assertions" or "legal conclusions" asserted in a complaint. See In re Burlington Coat Factory Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

4

Liberal construction of pleadings is favored and a plaintiff must demonstrate that it is entitled to relief by setting forth, explicitly or by fair implication, the essential elements of its claim. Berry v. Hamblin, 356 F. Supp. 306, 307-08 (M.D. Pa. 1973). See also Jones v. Philadelphia College of Osteopathic Medicine, 813 F. Supp. 1125, 1131 (E.D Pa. 1993). Only where a complaint fails to set forth the essential elements of the claim asserted therein, dismissal of that claim is appropriate. Jones, 813 F. Supp. at 1131-32; Berry, 356 F. Supp. at 308. Additionally, under the federal notice pleading standard, a claim is valid if it gives notice of any claim that could be asserted against the opposing party. See id., at 96; Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). A motion to dismiss may be granted only if it is clear the complaining party "could prove no set of facts that would entitle them to relief." Nami, at 65. In this case, a review of the Second Amended Complaint in this case discloses that Plaintiff has set forth all of the essential elements for his claim violation of Unfair Trade Practices Act and Consumer Protection Law against Home Depot.

## IV.   ARGUMENT

The legislative goal of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") is consumer protection and as such, it should be construed liberally. Com v. Parisi, 873 A.2d 3 (Cmwlth. 2005).

### A.   This Court Should Deny Home Depot's Motion Because Plaintiff's Claim For Violation Of Unfair Trade Practices And Consumer Protection Law Is Not Barred By The Economic Loss Doctrine.

In Count IV of its Second Amended Complaint, Plaintiff seeks damages from Home Depot based on a theory of violations of the UTPCPL. Home Depot argues that this Court should dismiss Count IV because claims for intentional fraud are barred by the economic loss doctrine. Such argument fails.

5

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." Duquense Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995). In Burns v. Williams et al., the Superior Court of Pennsylvania recently considered whether the economic loss doctrine barred recovery under tort claims when the only damage to the house itself was from water intrusion caused by defective windows. A true and correct copy of the Burns opinion is attached hereto as Exhibit "A." In Burns, the plaintiffs sought recovery for damages sustained to their home due to water damage and personalty as a result of the allegedly faulty construction by the general contractor, and/or substandard materials utilized by the window manufacturer. See Exhibit A, p. 2. The Superior Court recognized the limitations of the economic loss doctrine but disagreed with the window manufacturer's argument that because the windows and doors were an integrated part of the house, the economic loss doctrine limited the Burns' remedies to a contractual action. See Exhibit A, p. 11. The Superior Court relied on the fact that the Burns were able to prove damages outside of the loss product itself, stating:

> While the windows may be an integrated part of the house, the damage sustained by the failure of the windows to perform their proper function was not limited to the windows themselves, but rather spilled over to damage personalty within the house, including carpeting, draperies and other furnishings, in the form of saturation, rotting mold and bacteria.

See Exhibit A, p. 12. Likewise, in his Second Amended Complaint, Plaintiff asserts damages other than to the windows solely. Plaintiff alleges that as a result of Home Depot's violations of the UTPCPL, not only did Plaintiff delay in having the repairs performed (which prevented him from moving into his dream home), but also the value of Plaintiff's home has been diminished. See Second Amended Complaint ¶¶ 77, 78, 89. These losses are separate and apart from the cost

6

of the windows and the cost to repair the windows. Accordingly, the economic loss doctrine does not bar Plaintiff's claims under the UTPCPL.

Considering the well pleaded facts of Plaintiff's Second Amended Complaint, and accepting such facts as true, it is clear that Plaintiff has set forth all the essential elements for a cause of action against Home Deport for violations of the UTPCPL which are not barred by the economic loss doctrine. As such, this Court should deny Home Depot's Motion To Dismiss.

### B.   This Court Should Deny Home Depot's Motion Because Plaintiff Has Alleged Fraud Claims Which Are Not Intertwined With the Contract Claims.

Although this Court previously determined that the intentional fraud claims previously plead were interwoven with the breach of contract claim, in its Second Amended Complaint, Plaintiff alleges fraud which is extraneous to the breach of contract claim. After Home Depot reviewed the Plans, prepared the purchase orders and ordered the windows in accordance with the contract between the parties, and it then represented to Plaintiff that it would (a) correct the defects in the windows and (b) would send representatives who had the power and ability to fix the defective windows to Plaintiff's home. See Second Amended Complaint ¶¶ 74, 75. Home Depot made these representations with the intent that Plaintiff rely on them. See Second Amended Complaint ¶¶ 76. Plaintiff, in fact, relied upon the representations made by Home Depot and delayed in having any other party repair the defective windows which in turn prevented him from moving into his dream home in a timely fashion. See Second Amended Complaint ¶¶ 77, 78. In addition, as a result of Home Depot's false representations, the value of Plaintiff's custom home has been diminished. See Second Amended Complaint ¶ 89.

Considering the well pleaded facts of Plaintiff's Second Amended Complaint, and accepting such facts as true, it is clear that Plaintiff has set forth a fraud claim under the

UTPCPL that is factually distinguishable from the breach of contract claim alleged against Home Depot. As such, this Court should deny Home Depot's Motion To Dismiss.

## V.    **CONCLUSION**

Since Plaintiff has properly plead a cause of action against Home Depot for violations of the UTPCPL, this Court should deny Home Depot's Motion To Dismiss.

Fox Rothschild LLP

Dated: November 2, 2009                    By:    <u>Stephanie Nolan Deviney</u>
Stephanie Nolan Deviney, Esquire
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341
(610) 458-7500
(610) 458-7337 (fax)
sdeviney@foxrothschild.com

EX1 854053v1 11/02/09

# **<u>EXHIBIT A</u>**

EX1 854053v1 11/02/09

J. A18016/09

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PATRICK AND HELEN BURNS | :   IN THE SUPERIOR COURT OF |
| | :            PENNSYLVANIA |
| v. | : |
| | : |
| R. CRAIG WILLIAMS AND KRISTEN | : |
| FAY WILLIAMS, HURD MILLWORK | : |
| COMPANY, BENTLEY HOME | : |
| BUILDERS, LTD., GARVIN MITCHELL | : |
| CORPORATION, CHADWELL REALTY | : |
| ASSOCIATION, L.P., CHADWELL | : |
| REALTY ASSOCIATION, INC., | : |
| GENERAL PARTNER, HARRISON | : |
| ESTATES | : |
| | : |
| v. | : |
| | : |
| J.B.S. GENERAL CONTRACTING, | : |
| PARRETT WINDOWS, ADVANCED | : |
| WINDOW SUPPLY, INC., ADVANCED | : |
| WINDOW SALES, INC., AS | : |
| SUCCESSOR IN INTEREST TO | : |
| ADVANCED WINDOW SUPPLY, INC., | : |
| MIDATLANTIC PLASTERING, INC., | : |
| HINKLE & MCLAUGHLIN, BULLARD | : |
| COMPANY | : |
| | : |
| v. | : |
| | : |
| STEVEN KRAEGEL D/B/A CEDAR TECH | : |
| | : |
| APPEAL OF:  HMC, INC., f/k/a | : |
| HURD MILLWORD COMPANY, INC. | :   No. 3078 EDA 2008 |

Appeal from the Judgment Entered September 30, 2008
In the Court of Common Pleas of Delaware County
Civil Division at No. 04-4825

J. A18016/09

BEFORE:  Ford Elliott, P.J., Bender and Gantman, JJ.

MEMORANDUM:                    **FILED SEPTEMBER 2, 2009**

      This is an appeal by HMC, Inc., f/k/a Hurd Millwork Company, Inc. (Hurd), from an adverse judgment entered in an action filed by Patrick and Helen Burns, husband and wife, (collectively the Burns) against it and numerous other defendants, wherein the Burns sought recovery for damages sustained due to water damage to their home and personalty as a result of faulty construction by the general contractor Bentley Home Builders, LTD. (Bentley), and/or substandard materials used in the building of the home, namely, windows manufactured by Hurd. For the reasons that follow, we affirm.

      The trial court has ably summarized the pertinent facts and procedural history of this action as follows:

> The home [at issue, located at 15 Harrison Drive, Newtown Square, Pennsylvania] was built [in 1998] by Thomas G.M. Bentley through various of his companies[.]   Bentley also engaged the services of Advanced Window Supply, Inc. to supply him with windows for installation into the home and those windows which Advanced supplied included Hurd windows and Parrett Manufacturing windows.   Bentley installed about eighty (80) Hurd windows into the home.

> The home was initially purchased by Kristen and R. Craig Williams who, in 2002 sold the home to [the Burns].

> Within months of moving into the home, [the Burns] began to notice water leakage in and around numerous windows.  As a result of the water infiltration, [the Burns] suffered damage to the external and internal structure of the house including the

> drywall, the rough framing, the O.S.B. sheathing, the Tyvek
> housewrap, carpeting and various personal items.
>
> [The Burns] brought suit against Mr. & Mrs. Williams,
> [Bentley] and [Hurd].   Thereafter, [Bentley] joined seven
> *additional defendants who were involved in some portion of*
> construction of [the Burns'] home.
>
> Prior to trial, [the Burns] settled with all of the original and
> additional defendants save Hurd.
>
> At trial, [the Burns] claimed damage totaling $831,828.67.
> The jury returned a verdict against [Hurd and Bentley], in the
> sum of $632,691.73 finding that Hurd's windows were a cause of
> the damages to [the Burns'] house and that [Hurd and Bentley]
> *were each fifty (50%) per cent responsible for that damage.*
> Accordingly, the damages awarded against Hurd totaled
> $316,345.86.
>
> Hurd filed post trial motions which [the trial court] denied.
> Thereafter Hurd filed an appeal to the Superior Court[.]

Trial Court Opinion, 12/9/08, at 1-2.  The trial court did not direct Hurd to

file a statement of matters complained of on appeal, pursuant to Pa.R.A.P.

1925(b), and none was filed.

On appeal, Hurd, presents the following issues for our consideration:

1. Is [Hurd], the seller of windows and doors installed in [the
   Burns'] house, entitled to entry of judgment in its favor in
   this action for damages because:

   a. under the gist-of-the-action and economic loss
      doctrines, [the Burns] who purchased the completed
      house may not recover against Hurd under tort claims
      for negligence and product liability, since the windows
      and doors were sold under a warranty and [the Burns]
      claim only damage to the house itself from water
      intrusion; and

J. A18016/09

       b.  [the Burns] may not recover under the warranty because they failed to give notice of the alleged defects before they sued, and their claim is barred by provisions of the warranty contract (1) excluding coverage for windows and doors that were altered or improperly installed and (2) limiting the remedy for breach of the warranty to repair or replacement of the products?

2.I  s Hurd entitled to judgment in its favor on [the Burns'] tort and warranty claims because they are barred by the statutes of limitations, where the prior owners of the house whose knowledge is imputed to [the Burns], knew of the alleged defects in 1999 but [the Burns] did not sue until 2004?

3.Al  ternatively, is Hurd entitled to a new trial because:

       a.  the trial court failed to charge the jury on the elements of liability under any of [the Burns'] claims and declined to have the jury make separate determinations of liability on each claim; and

       b.  The trial court asked the jury to determine only causation and damages, but did not permit Hurd to present evidence that the alleged harm was caused by the conduct of parties that had settled before trial and refused to permit the jury to determine the liability of those parties so that Hurd could obtain a *pro rata* reduction of any damages awarded?

4.Al  ternatively, in light of the trial court's refusal to enable the jury to determine the settling parties' liability, is Hurd entitled to have the verdict molded to $0 to account for the settlements paid to [the Burns], which exceeded the total damages found by the jury?

Hurd's Brief at 3.

      We have set forth our standards of review in actions challenging the lower court's ruling on motions for judgment notwithstanding the verdict (JNOV) and new trial as follows:

- 4 -

J. A18016/09

The decision whether to grant a new trial lies within the trial court's discretion. *Martin v. Evans*, 551 Pa. 496, 501-02, 711 A.2d 458, 461 (1998). Therefore, when reviewing an order denying a motion for a new trial, we must determine whether the trial court "clearly and palpably abused its discretion or committed an error of law which affected the outcome of the case." *Whyte v. Robinson*, [617 A.2d 380, 382 (Pa. Super. 1992)]. "A new trial is warranted when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Martin*, 551 Pa. at 501, 711 A.2d at 461.

*Brinich v. Jencka*, 757 A.2d 388, 395 (Pa. Super. 2000) [*appeal denied*, 565 Pa. 634, 771 A.2d 1276 (2001)]. "'Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful. . . . Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment.'" *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 707 (Pa. Super. 2000)[, *appeal denied*, 567 Pa. 715, 785 A.2d 90 (2001)] (quoting *Foflygen v. Allegheny General Hosp.*, 723 A.2d 705 (Pa. Super. 1999), *appeal denied*, 559 Pa. 705, 740 A.2d 233 (1999)).

Conversely, JNOV may be entered if, after considering only the evidence supporting the verdict and giving the verdict winner the benefit of the doubt, the trial court clearly finds that the movant is entitled to judgment as a matter of law, [and/or] the evidence presented at trial was such that no two reasonable minds could disagree that the verdict should be in favor of the movant.

*Brinich*, 757 A.2d at 395 (citations omitted). ["[T]he standard of review for an appellate court is the same as that for a trial court." *Mahan v. Am-Gard, Inc.*, 841 A.2d 1052, 1058 (Pa. Super. 2003).] Finally, "the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court

J. A18016/09

> upon a showing that it abused its discretion or committed
> an error of law." **Ratti**, 758 A.2d at 707.

**Detterline v. D'Ambrosio's Dodge, Inc.**, 763 A.2d 935, 938 (Pa. Super.

2000).   Keeping these standards in mind, we will now address Hurd's issues

on appeal.

In its first issue, Hurd contends that it is entitled to judgment in its

favor because the trial court erred in permitting the Burns "to bring tort

claims for negligence and product liability [as] such claims are barred by the

gist-of-the-action and economic loss doctrines." Hurd's Brief at 17.

Specifically, Hurd asserts that because it sold the windows and doors

pursuant to a warranty and the Burns "claim only that leaks in the windows

and doors caused water damage to the rest of the house[,]" [t]he gist of

such claims is in contract (an action under the warranty), not tort." **Id.**

Moreover, Hurd asserts that as "[t]here were no personal injuries, and the

only product injured was the integrated product, [namely] the house into

which the windows and doors were installed, tort law does not provide

recovery for such economic losses." **Id.**

This Court has summarized the principles and law relevant to the "gist

of the action" doctrine, as follows:

> Generally, the doctrine is designed to maintain the
> conceptual distinction between breach of contract claims and tort
> claims. [**Bash v. Bell Tel. Co.**, 601 A.2d 825 (Pa. Super.
> 1992)].   As a practical matter, the doctrine precludes plaintiffs
> from re-casting ordinary breach of contract claims into tort

J. A18016/09

claims. ***Id.*** The ***Bash*** Court explained the difference between contract claims and tort claims as follows:

> [a]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals. . . .   To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

***Id.*** at 829, *citing,* ***Iron Mountain Sec. Storage Corp. v. American Specialty Foods, Inc.,*** 457 F.Supp. 1158, 1165 (E.D. Pa. 1978).

Thus, [although] it is possible that a breach of contract also gives rise to an actionable tort, [t]o be construed as in tort, . . . the wrong ascribed to defendant  must be the gist of the action, the contract being collateral." ***Bash***, 601 A.2d at 829, citing ***Closed Circuit Corp. v. Jerrold Electronics Corp.,*** 426 F.Supp. 361, 364 (E.D. Pa. 1977). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." ***Redevelopment Auth. V. International Ins. Co.,*** [685 A.2d 581, 590 (Pa. Super. 1996 ) (*en banc*) (quoting ***Phico Ins. Co. v. Presbyterian Med. Srvs. Corp.,*** 663 A.2d 753, 757 (Pa. Super. 1995))]. "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." ***Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.,*** 247 F.3d 79, 104 (3rd Cir. Pa. 2001), *cert. denied*, 534 U.S. 1162, 122 S.Ct. 1173, 152 L.Ed.2d 116 (2002), quoting, ***Bash***, 601 A.2d at 830.

The question of whether the gist of the action doctrine applies is an issue of law subject to plenary review. ***Id.*** at 106. As one federal court noted:

J. A18016/09

> "[T]he test is not limited to discrete instances of conduct; rather, the test is, by its own terms, concerned with the nature of the action as a whole. (footnote) (Footnote text:) "Gist" is a term of art in common law pleading that refers to "the essential ground or object of the action in point of law, without which there would be no cause of action." Black's Law Dictionary 689 (6th ed. 1990). "Action" is defined by Black's Law Dictionary as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law. . . . The "gist of the action" test, then, is a general test concerned with the "essential ground," foundation, or material part of an entire "formal complaint" or lawsuit.

> *American Guar. And Lia. Ins. Co. v. Fojanini*, 90 F.Supp. 2d 615, 622-623 (E.D. Pa. 2000) (citation omitted).

*Etoll, Inc., v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14-15 (Pa. Super. 2002).

Similarly, the economic loss doctrine is designed to limit causes of actions sounding in negligence when that negligence causes only economic loss. *Aikens v. Baltimore and Ohio Railroad Company*, 501 A.2d 277, 279 (Pa. Super. 1985). More specifically the economic loss rule states that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. 2003) (citing *Spivack v. Berks Ridge Corp.*, 586 A.2d 402 (Pa. Super. 1991)). *See also Rem Coal Co., Inc. v. Clark Equipment Co.*, 563 A.2d 128 (Pa. Super. 1987) (*en banc*) (providing that the economic loss doctrine precludes recovery for economic losses in negligence and strict

- 8 -

J. A18016/09

liability where the plaintiff has suffered no physical injury or property

damage).   We summarized the well established rule that was set forth in

**REM Coal Company**, **supra**, as follows:

> In **REM Coal**, the issue was whether there could be a recovery
> in tort where a product malfunctions because of an alleged
> defect in the article and causes damage to the product itself and
> consequential damages in the nature of cost of repair or
> replacement or lost profits, but the malfunction causes no
> personal injury and no injury to any other property of the
> plaintiff.  We concluded in **Rem Coal** that negligence and strict
> liability theories do not apply to actions between [the parties]
> where the only damage is to the product itself.  In reaching this
> conclusion we adopted the rationale of the United States
> Supreme Court in **East River S.S. Corp. v. Transamerica
> Delaval, Inc.**, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed 2d 865
> (1986).   As we explained in **N.Y. State Electric & Gas v.
> Westinghouse**, [564 A.2d 919 (Pa. Super. 1989)]:
>
> > [In the **East River** case, the Supreme Court]
> > emphasized that where an allegedly defective product
> > causes damage only to itself, and other consequential
> > damages resulting from the loss of the use of the
> > product, the law of contract is the proper arena for
> > redressing the harm because in such a case, the
> > damages alleged relate specifically to product quality
> > and value as to which the parties have had the
> > opportunity to negotiate and contract in advance.  They
> > have allocated the risks of possible types of losses, and
> > agreed on the level of quality that will be given for the
> > price demanded.   When the product fails to conform
> > and only economic losses result, the parties' recovery
> > one against the other for economic losses should be
> > limited to an action on that contract and no additional
> > recovery in negligence or strict liability is permitted.
>
> **Id.** [564 A.2d at 925-26].

J. A18016/09

*Lower Lake Dock v. Messinger Bearing*, 577 A.2d 631, 635 (Pa. Super. 1990). Thus, the economic loss doctrine has equal application to products liability and negligence cases.

In this instance, the Burns proceeded against Hurd on theories of breach of warranty (express and implied), product liability and negligence. They asserted damages in the nature of property damage to their house, as well as to their personalty within the house.   As part of their claims, the Burns relied on § 402A (1) of the Restatement (Second) of Torts referenced by the Pennsylvania Supreme Court in *Azzarello v. Black Brothers Company, Inc.*, 391 A.2d 1020, 1022 n.1 (Pa. 1978).     Section 402 A provides:

> (1)   One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>> (a)   the seller is engaged in the business of selling such a product, and
>>
>> (b)   it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2)   The rule stated in Subsection (1) applies although
>
>> (a)   the seller has exercised all possible care in the preparation and sale of his product, and

J. A18016/09

> (b)   the user or consumer has not bought the
>        product from or entered into any contractual
>        relation with the seller.

*Id.*

This provision does apply to the Burns' claim against Hurd because the Burns can be considered  "third persons" who have suffered "physical harm" to their property from a failure by Hurd to exercise reasonable care in performing its contractual duties. Therefore, a tort action under § 402A can lie in favor of the Burns.   To the same extent a negligence claim can be maintained.   Specifically, in order to establish a negligence action "the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and [that there was] actual loss or damage." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) (quotations omitted).

Nonetheless, Hurd contends that the gist of the action doctrine and the economic loss doctrine are applicable in this instance to abrogate the negligence and product liability claims asserted against it by the Burns. Specifically, Hurd posits that because there were warranties associated with the windows and doors and because the windows and doors were an integrated part of the house, the doctrines are applicable in limiting the Burns' remedies to a contractual action.  We disagree.

J. A18016/09

Applying the rules, as stated above, to the case *sub judice*, we conclude that the exceptions of gist of the action and economic loss doctrines do not apply, as the Burns have not only stated causes of action for both negligence and product liability, but they have further proven damages outside of the loss of the product itself.  While the windows may be an integrated part of the house, the damage sustained by the failure of the windows to perform their proper function was not limited to the windows themselves, but rather spilled over to damage personalty within the house, including carpeting, draperies and other furnishings, in the form of saturation, rotting, mold and bacteria.  Moreover, in review of the cases upon which Hurd relies to support his argument in this regard, we find those cases inapposite to the facts at hand.  Specifically, Hurd cites cases where the plaintiff and defendant are parties to an express contract and/or where a product installed on a construction project or in machinery malfunctions or fails to perform as intended, causing only purely economic losses, such as cost of repair, or replacement, business interruption, lost profits or wages and/or related incidental or consequential damages.  Conversely, in this instance, the Burns sustained losses other than those associated solely with the malfunctioning windows and had no direct contractual relationship with Hurd.  Additionally, any warranty provided to the Burns by Hurd was passed down by a transferable warranty.  The warranty was transferred from Hurd to Advanced Window Supply (Hurd's independent regional distributor), to

J. A18016/09

Bentley, to the Williams (first homeowners), and then to the Burns, as
second homeowners of the property at issue.  Moreover, it is disputed by the
parties as to when the Burns first became aware and/or obtained a copy of
the warranty relative to the windows.  Accordingly, for the above reasons,
we find that the Burns' claims of negligence and product liability are not
barred by the gist of the action and/or the economic loss doctrines.

Next, Hurd contends that "[s]tripped of the tort claims, this case
comes down to the warranty Hurd provided when it sold its windows and
doors."  Hurd's Brief at 28.  Hurd maintains that the warranty claims fail as
the Burns did not "provide notice of their claim of breach of warranty prior to
filing suit" as required by the Uniform Commercial Code, 13 Pa.C.S. § 2607
(c)(1).  Additionally, Hurd argues that the warranty became invalid because
its windows were altered and installed improperly by Bentley and its
subcontractors.  Hurd further maintains that its obligation under the contract
was limited by the express provisions of the warranty.  Namely, it claims
that the language of the warranty precluded an award of money damages by
strictly limiting its duty following its breach of the contract to the repair or
replacement of the defective materials and/or appurtenances by itself or its
agents.  The Burns' only recourse then if Hurd breached the contract by not
constructing the windows, which were placed in the house, in a "first class,
workmanlike manner" would be to allow Hurd to cure the defect.   We
however need not reach the merit of these claims, as we have determined

J. A18016/09

that the Burns' causes of action for negligence and product liability survived the gist of the action and economic loss doctrines.   Accordingly, since the Burns were meritorious on separate causes of action, we need not determine whether Hurd is entitled to relief on this alternative basis. ***Philips***, ***supra***, 841 A.2d at 1008 n.6.

Hurd next asserts that it is entitled to judgment because all of the Burns' claims are barred by the statutes of limitations.   In particular, Hurd argues that the Burns' claims are time-barred since "their predecessors-in-interest knew of water leaks from the heads of the windows from the time of the initial purchase in 1999[,]" and the Burns failed to file suit until April 12, 2004.   Hurd's Brief at 33.   Thus, Hurd in essence imputes any purported knowledge of the prior owners of the home to the Burns.

However, before we address this issue, we must first determine whether this claim has been waived.   The Burns allege that because Hurd did not raise the affirmative defense of the statute of limitations in its Answer and New Matter to their complaint, the defense is waived.   The Burns' Brief at 17.

It is well-established that

> [t]he statute of limitations does not divest the court of jurisdiction over either the cause of action or the parties, but is merely a procedural bar to recovery which may be waived by consent or conduct implying consent. ***Bellotti v. Spaeder***, [249 A.2d 343 (Pa. 1969)].
>
> Rule 1030 of the Pennsylvania Rules of Civil Procedure

- 14 -

J. A18016/09

> requires that the statute of limitations "shall" be pleaded as an affirmative defense under New Matter; otherwise, the defense is waived. **Royal Oil & Gas Corportation v. Tunnelton Mining Company**, [282 A.2d 384 (Pa. 1971)]. It has long been our rule that unless the statute is pleaded as a defense, it is waived. **Heath v. Page**, 48 Pa. 130, 142 (1864).

**Thompson v. Southeastern Pennsylvania Transp. Auth.**, 421 A.2d 471, 474 (Pa. Super. 1980). **See also Croyle v. Dellape**, 832 A.2d 466, 476 (Pa. Super. 2003) (providing, "[a]s a general rule, a statute of limitations defense must be raised in new matter or else it is waived"). However, where the lower court permits counsel, "to raise the affirmative defense of the statute of limitations" in a subsequent proceeding, including trial and "[n]o other party object[s] to this[,] . . .the failure to raise the defense in the pleadings is a defect which has been waived." **Pascale v. Hechinger Company of PA.**, 627 A.2d 750, 757 (Pa. Super. 1993).   Thus, when the lower court permits "pursuit of the defense [at a later juncture in the proceedings], its actions are tantamount to a tacit allowing of amendment of the pleadings." **Id.**

While Hurd, in this instance, did not raise the affirmative defense in its New Matter, it subsequently raised this challenge in a motion for partial summary judgment filed December 20, 2005, as well as at trial.   The trial court made no finding of waiver by Hurd.   Rather it entertained Hurd's statute of limitations argument on the merits.   In rejecting this argument, the trial court reasoned:

J. A18016/09

> Hurd also asserts that the Statute of Limitations on [the Burns'] claims had run.  Whether the [statute] has run on a claim is usually a question of law for the judge.  If there is a factual dispute, the determination is for the jury.  **Smith v. Bell Telephone Co.**, [153 A.2d 477 (Pa. 1959)].

> [The Burns] moved into their home in May 2002 completely unaware of any problems with the house.  They experienced water problems within months and started suit in April 2004.  There was no other evidence presented to create a factual dispute and this court properly exercised its discretion in ruling as a matter of law that the statute of limitations on [the Burns'] claims had not run.

Trial Court Opinion, 12/9/08, at 4-5.   We agree with the trial court's determination.   An exception to the affirmative defense of the statute of limitations is the discovery rule.

> The discovery rule "arises from the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." **Pocono Intern. Raceway, Inc. v. Pocono Produce, Inc.**, [468 A.2d 468, 471 (Pa. 1983)].  In such circumstances, "the limitations period does not begin to run until the discovery of the injury is reasonably possible." [**Dalrymple v. Brown**, 701 A.2d 164, 167 (Pa. 1997)].  The party seeking to invoke the discovery rule "bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence." **Cocharan v. GAF Corp.**, [666 A.2d 245, 249 (Pa. 1995)].

**Miller v. Ginsberg**, 874 A.2d 93, 97-98 (Pa. Super. 2005).

The certified record reveals that the Burns purchased and settled on the house at issue on April 30, 2002 and moved into the home the following week.  At that time, there was no evidence of water infiltration or damage to the home.  The Burns were not placed on notice by the previous owners of problems with water leakage and a home inspector who completed an

- 16 -

J. A18016/09

inspection prior to settlement did not detect any such problems.   Within

months after moving into the premises, the Burns became aware of the

water infiltration through and/or around various windows.   Thereafter, they

commenced the within action by Praecipe for Writ of Summons on April 12,

2004.   There was no evidence presented at trial to dispute these facts.

Therefore, the trial court properly found that the Burns' claims were not

barred by the statute of limitations.

In the alternative, Hurd requests a new trial averring that "the trial

court failed to present the case to the jury in a way that would permit it

properly to determine or apportion liability."   Hurd's Brief at 37.   Hurd's

argument in this regard is two-fold.   First, Hurd contends that "[t]he court

erred in refusing to instruct the jury on liability and failing to have the jury

render a separate verdict on each claim." *Id.* at 38.   Secondly, Hurd asserts

that "[t]he court erred in restricting evidence that any harm to [the Burns]

was caused by others and in excluding other responsible parties from the

verdict slip." *Id.* at 43.   Specifically, in its first challenge, Hurd argues that

because the court "refused to dismiss the negligence and product liability

claims asserted against [it], the court was faced with a case requiring the

jury to navigate both of those areas of tort law, as well as the law of

warranty." *Id.* at 38.   Hurd however posits that the court provided

inadequate "discussion of what needed to be proven to recover on such

claims" and in support cites an isolated portion of the court's instruction. *Id.*

J. A18016/09

In addressing this challenge to the jury instructions we are guided by

the following standard of review:

> We will grant a new trial based on error in the court's charge
> if, upon considering all the evidence of record we determine that
> the jury was "probably mislead" by the court's instructions or
> that an omission from the charge amounted to "fundamental
> error." *Price v. Guy*, 558 Pa. 42, 735 A.2d 668, 671 (1999);
> *see also Carpinet v. Mitchell*, 853 A.2d 366, 371 (Pa. Super.
> 2004).   Conversely, "[a] jury instruction will be upheld if it
> accurately reflects the law and is sufficient to guide the jury in
> its deliberations." *Cruz v. Northeastern Hosp.*, 801 A.2d 602,
> 611 (Pa. Super. 2002).
>
> In accordance with this prescription, "all issues which are
> relevant to pleadings and proof may become the subject of jury
> instructions." *Carpinet*, 853 A.2d at 371.  Although the court's
> instructions "should not exclude any theory or defense that has
> support in the evidence," *McClintock v. Works*, 716 A.2d 1262,
> 1266 (Pa. Super. 1998), the court may charge "only on the law
> applicable to the factual parameters of a particular case and it
> may not instruct the jury on inapplicable legal issues." *Cruz*,
> 801 A.2d at 611.

*Betz v. Erie Ins. Exchange*, 957 A.2d 1244, 1261 (Pa. Super. 2008)

(quoting *Angelo v. Diamontoni*, 871 A.2d 1276, 1279 (Pa. Super. 2005));

*see also Quinby v. Plumsteadville Family Practice, Inc.*, 907 A. 2d

1061, 1069 (Pa. 2006).

In reviewing the court's instruction as a whole it becomes evident that

the court had narrowed the issues and presented guidance through

hypotheticals, demonstrative examples and definitions to aid the jury with

regard to the issue of liability.  "The primary duty of the trial judge in

charging the jury is to clarify the legal principles involved so that the jury

J. A18016/09

may comprehend the questions that it must decide." **Sehl v. Vista Linen Rental Serv. Inc.**, 763 A.2d 858, 863 (Pa. Super. 2000).   In this instance, although liability was contested, all parties acknowledged that the house sustained damage as a result of water leakage.  The parties do not agree to the source of that damage, namely whether their actions or lack of actions causally contributed to the water infiltration and resulting damage.  As such, they presented, at trial, testimony in support of their conflicting theories of liability.   Thus, we find that the facts required the court to instruct the jury on legal causation and substantial factor, which it did.  Accordingly, the trial court did not err in concentrating on the principle of causation nor did it abuse its discretion in its charges to the jury, as it sufficiently set forth the legal principles involved, including illustrative examples related to the legal concepts of negligence, products liability and breach of warranty. Moreover, Hurd has not convinced this Court that the trial court's charging of the requested instructions would have changed the result of the verdict. **See Miller**, 874 A.2d at 98 (stating that, "[a]n appellate court will reverse for an improper jury instruction 'only where the trial court committed a clear abuse of discretion or an error of law that controlled the outcome of the case'") (quoting **Schaaf v. Kaufman**, 850 A.2d 655, 666 (Pa. Super. 2004)).  Consequently, we do not find that the trial court abused its discretion or erred as a matter of law in its charge to the jury.

- 19 -

J. A18016/09

With regard to Hurd's claim that the verdict slip should have further contained special interrogatories divided into categories for each separate cause of action, we similarly find no merit to this contention. "Generally, a trial judge may grant or refuse a request for specific findings on the basis of whether such would add to a logical and reasonable understanding of the issue." **Betz**, 957 A.2d at 1262 (citations omitted). "Thus, where the evidence in the case is such that the use of special interrogatories may be helpful to the jury in understanding the issues for decision, a request for such special findings may be granted." **Id.** However, "[t]o permit the jury to return special findings, where they are unnecessary, can create misleading issues and defeat justice." **Id.** (Citations omitted).

In this instance, Hurd in essence asserts that the court "oversimplified" the case in focusing the jury's attention on causation, to the exclusion of the causes of action for negligence, products liability and breach of warranty. **See Betz**, 957 A.2d at 1262. Because the parties agree that the house was in deplorable condition due to pervasive water damage, the main consideration then became whether the damages incurred were a result of faulty construction by the general contractor Bentley and/or due to substandard materials used in the building of the home, namely, windows manufactured by Hurd. Therefore, special findings under the factual circumstances of this case were unnecessary to aid the jury in rendering its decision. On the contrary, the court from the evidence presented at trial

- 20 -

J. A18016/09

was able to narrow the scope of the issues to be presented to the jury without invading their province.  Accordingly, we do not find that the trial court erred in refusing Hurd's special interrogatories.

Hurd further argues that "[t]he court erred in restricting evidence that any harm to [the Burns] was caused by others and in excluding other responsible parties from the verdict slip[,]" more specifically, the other defendants and additional defendants that settled before trial.  Hurd's Brief at 43.  Hurd sought to introduce evidence that the Burns' damages "were caused by the incompetent work of the general contractor and subcontractors, and not by any defect in [its] windows." *Id.* at 43-44.  While evidence of any leakage of Hurd's windows or doors, which was caused by the improper installation by Bentley, was permitted, Hurd states that it was precluded from introducing evidence that water intrusion in the house occurred because of bad workmanship by the subcontractors, in other unrelated areas of the house. *Id.* at 44.

> When reviewing evidentiary determinations, our standard of review "is very narrow." *Cruz v. Northeastern Hospital*, [801 A.2d 602, 610 (Pa. Super. 2002)].  We reverse "only for an abuse of discretion or an error of law." *Id.*  Additionally, to constitute reversible error, an evidentiary ruling "must not only be erroneous, but also harmful or prejudicial to the complaining party." *Ettinger v. Triangle-Pacific Corp.*, [799 A.2d 95, 110 (Pa. Super. 2002)].  Evidentiary rulings "which do not affect the verdict will not provide a basis for disturbing the jury's judgment." *Bryant v. Reddy*, [793 A.2d 926, 928 (Pa. Super. 2002)].

- 21 -

J. A18016/09

*Miller*, 874 A.2d at 97.   Hurd maintains that because proof of causation was an essential element to each of the Burns' claims it was imperative that the settling defendants and additional defendants conduct be held admissible.   The record reflects that the trial judge carefully considered Hurd's concerns and arguments at the time the court dismissed the settling defendants and additional defendants from the case. Thus, while the trial judge excused all settling defendants and additional defendants, except Bentley, from participating in the trial it permitted Hurd to call the settling parties at trial as witnesses.   Based on the jury verdict of 50% liability to Bentley, as the general contractor, and 50% liability assigned to Hurd, as the manufacturer of the windows at issue, we believe that the verdict as to Hurd would have been unchanged even if the subcontractors had participated in the trial.   Therefore, because the evidentiary determination did not affect the verdict and avoided confusion within the jury, the trial court did not abuse its discretion in this ruling.

Lastly, Hurd requests that "the trial court [be] directed to mold the judgment to zero because [the Burns] received more in pre-trial settlements than the jury awarded."   Hurd's Brief at 48.   Hurd asserts that because the Burns were awarded $632,691.73 by the jury and had previously received settlement payments totaling $722,500, the Burns improperly received a "windfall" in this case.   Thus, Hurd concludes that because the Burns "were made more than whole for their claims of property damage," the trial court

- 22 -

J. A18016/09

should be ordered to mold the verdict to zero.   We find Hurd's argument without merit.

Each of the releases in the instant case provided *only* for reduction of the verdict by the joint tortfeasor's *pro rata* share.   In ***Moran v. G. & W.H. Corson, Inc.***, 586 A.2d 416 (Pa. Super. 1991), this Court had an opportunity to address and refute the precise argument raised by Hurd.   In doing so, we reasoned as follows:

> Contrary to the result urged by appellees, *where a release has been executed, the verdict is reduced only by the proportionate share of the settling tortfeasor. The actual amount of the release, if it exceeds this sum, is of no consequence in the satisfaction of the judgment of the remaining defendants. The fact that the plaintiff may receive a larger dollar amount in damages than that fixed by the jury does not militate against such an approach.*

***Charles v. Giant Eagle Markets***, [522 A.2d 1, 3 (Pa. 1987)] (Emphasis supplied).

Moreover, we find the Supreme Court's reasoning in ***Giant Eagle Markets*** clearly applicable to cases not tried under the Comparative Negligence Act:

> The respective obligations between parties to a lawsuit can be finally determined either by way of a bona fide settlement or through trial. Settlement is a valuable tool in our arsenal of dispute resolution and it should not be undermined. The obligation of a tortfeasor as determined by settlement with the plaintiff should not be affected by a subsequent verdict against any of the remaining defendants. The inducements for a defendant to settle are the certainty of the agreed-upon obligation and the avoidance of the vagaries of trial. The finality of the settlement agreement is crucial. Any subsequent trial against the remaining defendants should not disturb the resolution reached between the plaintiff and

- 23 -

J. A18016/09

the settling tortfeasor. It would be an equal disservice to a supportive settlement policy to provide a windfall to a non-settling tortfeasor where the settlement proves to be more generous than the subsequent verdict. As noted by the late Mr. Justice Musmanno, in dissent, in **Daugherty v. Hershberger**, [126 A.2d 730 (Pa. 1956)]:

> To me it is absurd that a tortfeasor, because of the generosity of another person with whom he is no way associated except in fault, should by law be excused from paying what a tribunal of law has determined he should pay as a result of his own adjudicated individual wrong.

> *Id.* at [735]. Appellees' concern over a windfall to the plaintiff, if appellee were to be required to pay its full pro rata share, is far overshadowed by the injustice of the result they urge. In addition to the erosion such a position would have upon a policy encouraging settlements, it is also bottomed on a fundamentally flawed premise. It assumes that the jury verdict more accurately measures the tortfeasor's obligation than that which is agreed upon between the parties by way of settlement. Such an assumption is without foundation either in reason or experience. There is no basis for concluding the jury verdict must serve as a cap on the total recovery that a plaintiff may receive. The responsibility of the settling tortfeasor should be finally resolved by the terms of the settlement.

**Charles v. Giant Eagle Markets**, *supra*, [522 A.2d at 2-3].

**Moran**, 586 A.2d 421-22. Thus, we find the holding in **Moran** dispositive of

Hurd's arguments.

Judgment affirmed.

- 24 -

J. A18016/09

Judgment Entered.

Prothonotary

Date:_____