**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL DeFEBO, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 09-2993 |
| | : | |
| ANDERSEN WINDOWS, INC., | : | |
| and HOME DEPOT U.S.A., INC., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM RE: HOME DEPOT U.S.A., INC.'S
MOTION TO DISMISS COUNT IV OF SECOND AMENDED COMPLAINT**

**Baylson, J.**                                                                **November 23, 2009**

Presently before the Court is Defendant Home Depot U.S.A., Inc.'s ("Home Depot")

Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint (Docket No. 29). As

noted in this Court's September 3, 2009 Memorandum in this case, which addressed Home

Depot's prior Motion to Dismiss various counts in the Complaint, the subject dispute arises

between a purchaser of windows and the seller and manufacturer of those windows. See DeFebo

v. Andersen Windows, Inc., No. 09-2993, 2009 WL 2837684, at *1-2 (E.D.Pa. Sept. 03, 2009).

For the reasons that follow, the Motion will be granted.

**I.      Factual and Procedural History**

The Court detailed the factual allegations in this case in its September 3, 2009

Memorandum. See Defebo, 2009 WL 2837684, at *1-2. The Court assumes the parties'

familiarity with those facts and sets forth the background relevant to the pending Motion below.

A.      **Underlying Events and Complaint**

Plaintiff Daniel Defebo's ("Defebo") Complaint (Docket No. 1, Ex. A-2) alleged that he

was unable to install jamb extensions onto windows that he had specially ordered from Home

Depot and that Defendant Anderson Windows ("Andersen") had manufactured.  Defebo alleged

that the misalignment between the arched windows and the casement windows manufactured by

Andersen caused the installation problems.  (Compl. ¶¶ 13-17.)  According to the Complaint,

Defebo experienced problems with several other Anderson products that he had ordered from

Home Depot, including a door and other windows.  (Compl.¶ 18.)   Defebo further alleged that

after several unsuccessful attempts to have Home Depot and Andersen rectify the problem, he

purchased new products from a different manufacturer.  (Compl. ¶¶ 19-39.)  The Complaint

alleges that Home Depot accepted the return of the windows but did not refund the full purchase

price, and refused to accept the return of the patio door.  (Compl. ¶¶ 35-36.)

Based on these events, Defebo filed his Complaint in the Court of Common Pleas of

Bucks County, Pennsylvania on June 12, 2009 that included breach of contract,

misrepresentation, and breach of implied warranties of merchantability and fitness for a

particular purposes claims (Counts I-IV), and violation of the Pennsylvania Unfair Trade

Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. 201-1, et seq., (Count V) against

Home Depot.  Specifically, Defebo's UTPCPL claim alleged that "Home Depot engaged in

fraudulent conduct in misrepresenting to Defebo the skill and expertise of its employees in

reviewing construction plans, and selecting and furnishing suitable Andersen Windows

products."  (Compl. ¶ 72.)  The Complaint then provided that "[a]s a result of Home Depot's

misrepresentation, Defebo entered into the contract to purchase Andersen windows."  (Compl. ¶

73.)

On July 7, 2009, Defendants removed the case to the Eastern District of Pennsylvania
(Docket No. 1).

**B.      Home Depot's First Motion to Dismiss**

Defendants subsequently filed Motions to Dismiss the Complaint (Docket Nos. 3, 5).
Home Depot's Motion to Dismiss sought to dismiss Defebo's misrepresentation and UTPCPL
claims.   On September 3, 2009, the Court granted Home Depot's Motion to Dismiss with leave
for Defebo to amend the UTPCPL count.  Defebo, 2009 WL 2837684, at *9.

With respect to the UTPCPL claim, the Court found that the economic loss doctrine bars
recovery in tort actions, and that Defebo failed to establish that his allegations of intentional or
fraudulent misrepresentation fell within a recognized exception to the economic loss doctrine.
Id. at *6-9.  Despite "seemingly conflicting holdings" from lower state and federal courts, the
Court determined that it was "bound by a Third Circuit decision" predicting that the
Pennsylvania Supreme Court would rule that the economic loss doctrine barred a UTPCPL claim
where "the tort claims are clearly intertwined with, rather than extraneous to, the contract
claims."  Id. at *7-8.  The Court then found that Defebo's "intentional fraud claims are clearly
interwoven with the breach of contract claim."  Id. at *8.  Accordingly, the Court dismissed
Defebo's UTPCPL count with leave to amend in order "to state a claim that has been approved
by a court applying Pennsylvania law," such as "facts that support a claim for damages that does
not implicate the economic loss doctrine or that falls within the exception to that doctrine for
fraud claims that are not intertwined with breach of contract claims."  Id.

C.      **Second Amended Complaint**

On October 29, 2009, Defebo filed a Second Amended Complaint.  (Docket No. 28.)  In

setting forth the relevant facts, Defebo modified his allegations to emphasize that Home Depot

"represented" to him that it would repair the defects and "promise[d] to install the newly

supplied extension jambs."  (Compl. ¶¶ 24, 25, 28, & 36.)  Defebo also added an allegation

detailing that "[a]lthough the windows are an integrated part of [his] custom home, the damages

sustained by [the windows] . . . diminishes the value of [his] custom house."  (Compl. ¶ 42.)

Defebo then amended his UTPCPL claim (Count IV) to allege that Home Depot

represented that it would correct the defects with the windows "with the intent that Defebo rely

on them," that "Defebo, in fact, relied on these promises and delayed in having any other party

repair the defective windows."  (Second Am. Compl. ¶¶ 74-77.)  Defebo alleges that as a result

of reliance upon Home Depot's representations, he "has been prevented from moving into his

dream home in a timely fashion," and

> has suffered substantial damages, including the cost of fabricating and installing custom jamb
> extension, the cost of the replacement patio door and transom window unit, the cost of the original
> patio door and transom window unit which Home Depot has refused to fund, resulting from
> uncorrected defects, attorneys' fees, and costs of suit.

(Second Am. Compl. ¶ 88.)  His UTPCPL claim reiterates the allegation that the damages

sustained to the windows diminished the value of his custom home.  (Second Am. Compl. ¶ 89.)

On October 20, 2009, Defebo filed the pending Motion to Dismiss Count IV of Plaintiff's

Second Amended Complaint.  (Docket No. 29.)

II.     **The Parties' Contentions**

A.      **Home Depot's Arguments**

Home Depot avers that the UTPCPL claim in the Second Amended Complaint, like the

UTPCPL claim in the Complaint, failed to cure the deficiencies identified in the Court's

September 3, 2009 Memorandum and Order.  (Mot. to Dismiss 6-10.)  Specifically, Home Depot

contends that the Court determined that "claims based on allegations of intentional fraud . . . are

barred by the economic loss doctrine," and only permitted Defebo to amend his complaint to

allege facts that "do[] not implicate the economic loss doctrine[,] fall within the exception to that

doctrine for fraud claims that are not intertwined with breach of contract claims," or are not

"foreclosed by the parol evidence rule."  (Mot. to Dismiss 6 (quoting Defebo, 2009 WL 2837684,

at *9).)

Home Depot asserts that the Second Amended Complaint contains allegations already

determined to be insufficient to support a UTPCPL claim and new allegations that are still

"based on alleged representations by Home Depot that it would repair the allegedly defective

Windows," which "continue to allege only economic losses and are still intertwined" with the

parties' contractual relationship.  (Mot. to Dismiss 7.)  In addition, Home Depot contends that

"the newly alleged representations . . . could not have induced [Defebo] to purchase the

Windows" from Home Depot because Defebo failed to make such an allegation, and because the

alleged representations occurred so long after the purchase that no connection between those

representations and the purchase could possibly exist."  (Mot. to Dismiss 9.)  Home Depot then

argues that Defebo "claims to have suffered only a delay in moving into the Property as a result

of Home Depot's alleged conduct" which fails to establish that Home Depot's alleged

misrepresentations "proximately caused any loss," as required under UTPCPL.  (Mot. to Dismiss

9-10.)  Home Depot thereby concludes that the UTPCPL claim is insufficient as a matter of law.

### B.    Defebo's Contentions

Defebo responds that his UTPCPL claim is not barred by the economic loss doctrine, because he "asserts damages other than to the windows solely," and also alleges that "the value of [his] home has been diminished." (Pl.'s Resp. 6.)  Defebo contends that under Pennsylvania law, a plaintiff need only "prove damages outside of the loss product itself." (Pl.'s Resp. 6.)  Defebo also avers that the UTPCPL claim alleges fraud "extraneous to the breach of contract claim," namely that Home Depot's represented to Defebo that it would correct the defects in the windows and send representatives to do so, Defebo relied upon these representations, resulting in a delay in repairing the defects and moving into his house, and a decrease in the value of his custom house. (Pl.'s Resp. 7.)  Defebo accordingly concludes that he has properly pled a UTPCPL claim.

## III.   Legal Standards

### A.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, not including interest and costs.

### B.    Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Iqbal clarified that the Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'" 129 S. Ct. at 1953.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

**IV.    Discussion**

As this court recognized in its dismissal of the UTPCPL claim from Defebo's Complaint, it is bound by the Third Circuit's holding in Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), "that the Supreme Court of Pennsylvania would apply the economic loss doctrine to

intentional torts," id. at 680, and thus, intentional fraud claims "clearly interwoven with the breach of contract claim" are barred by the doctrine, Defebo, 2009 WL 2837684, at *9.  For the amended UTPCPL count, the question for the Court is whether Defebo has alleged a claim that either falls within a recognized exception to the economic loss doctrine for UTPCPL purposes, or is not interwoven with his breach of contract claims.

Defebo contends that Pennsylvania law recognizes an exception where a plaintiff alleges damage not only to the property that is the subject of the parties' contract, but also additional property.  (Pl.'s Resp. 6.)  Defebo relies upon the Superior Court of Pennsylvania's decision in Burns v. Williams, 2008 PA Super. 3078, J. A18016/09 (Pa. Super. Ct. Sept. 2, 2009) (non-precedential), another case involving a PTPCPL claim respecting allegedly defective windows for which the parties contracted, held that the economic loss doctrine did not apply  where "the damage sustained . . . was not limited to the windows themselves, but rather spilled over to damage personalty within the house, including carpeting, draperies, and other furnishings, in the form of saturation, rotting, mold and bacteria," id. at 12.  First of all, as the Court recognized in its September 3, 2009 decision, some Pennsylvania state courts have refused to follow Werwinski in applying the economic loss doctrine to UTPCPL claims.  Defebo, 2009 WL 2837684, at *8; see, e.g., Smith v. Reinhart Ford, 68 Pa. D. & C.4th 432, 437-38 (Pa. Com. Pl. 2004) (collecting cases).  Burns is yet another example of such a state court decision.  Absent a decision to this effect from the Pennsylvania Supreme Court or the Third Circuit, Werwinski remains good law and is binding upon this Court.  See Heindel v. Pfizer, 381 F. Supp. 2d 364, 485-86 (D.N.J. 2004) (explaining that lower federal and state court decisions are not binding in light of the Third Circuit's holding in Werwinski).  Moreover, Burns is an "unpublished

memorandum decision" that generally "shall not be relied upon or cited by a Court or a party in any action or proceeding" pursuant to Pennsylvania Superior Court Internal Operating Procedure 65.37.[1]

In any event, Burns is distinguishable from the case at hand, because it involved substantial damage to the "personalty within the house," Burns, 2008 PA Super. 3078, at 12, which cannot be said of Defebo's case, in which Defebo only alleges damages to the window and overall house (Second Am. Compl. ¶¶ 42, 89).  As both Burns and Defebo concede, "windows are an integrated part" of a house.  (Second Am. Compl. ¶¶ 42, 89); see also Burns, 2008 PA Super. 3078, at 12.  Defebo thus failed to establish that a recognized exception to the economic loss doctrine applies to his UTPCPL claim.

As for the remaining question of whether Defebo alleged a claim that is not clearly intertwined with his underlying contractual claims, although Defebo has carefully used intentional misrepresentation language in his Second Amended Complaint, (see Second Am. Compl. ¶¶ 74-78), such allegations do not change the fact that the purported misrepresentations in question relate directly to Home Depot's obligation under the contract to provide functioning

---

[1] Internal Operating Procedure 65.37 provides as follows:

> An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding. When an unpublished memorandum is relied upon pursuant to this rule, a copy of the memorandum must be furnished to the other party and to the Court.

Pa. Super. Ct. I.P.O. § 65.34.

windows.  As a result, the fraud claim remains tied to the underlying contract action, and is

therefore barred by the economic loss doctrine, under <u>Werwinski</u>.  <u>See</u> 286 F.3d at 680.

**V.      Conclusion**

For the reasons detailed above, the Court will grant Home Depot's Motion to Dismiss

Count IV of the Plaintiff's Second Amended Complaint and will dismiss the UTPCPL count as

to Home Depot with prejudice.  An appropriate Order follows.